No. 90-504

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,
        Plaintiff and Respondent,

-vs-

TIMOTHY W. MOONEY,

        Defendant and Appellant.

**FILED**

APR 22 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Third Judicial District,
               In and for the County of Powell,
               The Honorable Ted L. Mizner, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        C. F. Mackay; Anaconda, Montana

        For Respondent:

        Marc Racicot, Attorney General; Paul D. Johnson,
        Assistant Attorney General, Helena, Montana;
        Christopher G. Miller; Deer Lodge, Montana


                        Submitted on Briefs: February 28, 1991

                        Decided: April 22, 1991

Filed:

                    Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

Appellant, Timothy W. Mooney, was convicted, following a jury trial in the District Court for the Third Judicial District, Powell County, of felony assault in violation of § 45-5-202(2)(c), MCA. From that conviction he appeals. We affirm.

The only issue raised on appeal is:

Did the District Court err in refusing defendant's motion to dismiss for lack of a speedy trial?

### SUMMARY OF FACTS

On June 15, 1989, the District Court issued its Order granting leave to file an information charging the defendant with felony assault. Leave had been sought based upon the State's allegation that on May 23, 1989, while an inmate at the Montana State Prison, Mooney had knowingly and purposefully caused bodily injury to a correctional officer whose name was Tallon Miller. The information was filed on that same date.

On June 22, 1989, defense counsel appeared in court on behalf of the defendant. At that time the defendant requested a psychiatric examination and asked that his arraignment be continued until receipt of the psychiatrist's report. That order was granted.

The psychiatric report was submitted on October 10, 1989. This case was then set for trial on November 30, 1989.

The clerk of court's notes dated November 30, reflect that the defendant had not been able to decide until the previous Tuesday

1

whether to plead guilty or go to trial. On that basis, his attorney represented to the court that he was unprepared to go to trial, and the trial date was vacated. The clerk's notes also reflect that at that time defendant's attorney represented to the court that there would not be a "speedy trial" problem.

This case was next scheduled for trial and was actually tried on March 26, 1990. On March 21, four days before trial, defendant moved to dismiss the complaint against him for the reason that he had been denied his constitutional right to a speedy trial. That motion was denied.

On March 26, 1990, the State called four witnesses and concluded its case by noon. Defendant's case was concluded by 2:25 p.m., and the jury returned a verdict of guilty by 5:00 p.m. that same day.

There is no indication in the record that the State in any way contributed to the delay that occurred from November 30, 1989, until March 26, 1990, when this case actually went to trial. It appears to have been a purely institutional delay as a result of the normal occurrence of the criminal trial calendar in Powell County.

The record also reflects that at the time of the acts which form the basis of the complaint against the defendant he was an inmate at the Montana State Prison housed in maximum security; he was not eligible to be considered for parole until June 1990; and the soonest he could have been released from his original imprisonment was August 26, 1990.

2

SPEEDY TRIAL ANALYSIS

The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution, which is made applicable to the states by the Fourteenth Amendment. Klopfer v. North Carolina (1967), 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1. The right to a speedy trial is also guaranteed by Article II, Section 24, of the 1972 Montana Constitution.

To determine whether a defendant's right to a speedy trial has been violated, the United States Supreme Court has set forth several factors which should be considered. Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101.

These factors have been applied by this Court on numerous occasions. State v. Steward (1975), 168 Mont. 385, 543 P.2d 178; State v. Keller (1976), 170 Mont. 372, 553 P.2d 1013; State ex rel. Briceno v. District Court (1977), 173 Mont. 516, 568 P.2d 162. The four factors that are to be considered and balanced are:

1. length of delay;

2. reason for delay;

3. assertion of the right by defendant; and

4. prejudice to the defendant.

However, none of the four factors are either necessary or sufficient conditions in the determination of whether there has been a deprivation of the right to a speedy trial. Barker, 407 U.S. at 533.

This Court has stated:

> . . . that the first of the *Barker* factors, the length of delay, is the trigger to a speedy trial inquiry. There is no need to examine the latter three factors unless some delay deemed presumptively prejudicial has occurred.

State v. Palmer (1986), 223 Mont. 25, 27, 723 P.2d 956, 958.

The appellant contends that the delay dates from his arrest on May 23, 1989, and continues to the date of trial on March 26, 1990, for a total of 307 days. The State contends that when an accused is already in prison for a prior offense, the speedy trial clock does not begin to run until formal charges are filed. From that starting point, the State suggests that the total delay that occurred in this case is 284 days. It is not necessary to decide in this case whether the total delay is calculated from the date of Mooney's arrest or the date on which he was formally charged. By either calculation the total delay was sufficient to trigger a speedy trial inquiry. See, Palmer, 723 P.2d at 958.

Having triggered the "speedy trial" inquiry based upon the unusual length of delay in this case, the State must either provide a reasonable excuse for the delay or show that the defendant was not prejudiced thereby. State v. Ackley (1982), 201 Mont. 252, 653 P.2d 851. In considering those factors, we will proceed with the remainder of the Barker test.

The second Barker factor is the reason for delay. The period of delay attributable to the defendant's actions should be deducted

4

from the total delay in determining whether it was an unreasonable period.

In Palmer we found that the length of delay caused by a defense request for a mental evaluation was attributable to the defendant. Palmer, 723 P.2d at 958. In this case, a mental evaluation was requested by the defendant on June 22, 1989, and the evaluation was provided to the court on October 10, 1989. The evaluation resulted in a delay of 110 days.

In State v. Dess (1979), 184 Mont. 116, 124, 602 P.2d 142, 146, we held that delay which resulted from the defendant's motion to continue the trial date was also attributable to the defendant. In this case, trial was originally set for November 30, 1989, and was continued at the request of the defendant. It was next scheduled for March 26, 1990. There is no evidence that the length of the continuance was caused by any conduct on the part of the State. The length of that delay was 116 days. Therefore, if we accept the length of delay as 307 days, as suggested by the defendant, 226 of those days were necessitated by the defendant's exercise of his procedural rights. Eighty-one days are attributable to the State. Of those 81 days, there is no evidence to suggest, nor does the defendant contend, that they were caused by bad faith or oppressive tactics by the State.

No one would suggest that defendant should waive his procedural rights for a speedy trial or that institutional delays are acceptable if they result in prejudice to the defendant. However,

5

institutional delays, and delays which are attributable to the defendant, weigh less heavily against the State in the balancing process to which we initially referred.

The third factor under Barker is "assertion of the right by the defendant." In this case, even though defendant at one time suggested that he would not raise a "speedy trial" issue, and even though it was not raised until four days prior to trial, the State concedes that the defendant made a timely assertion of his right to a speedy trial. Based upon previous decisions of this Court, it appears that defendant's assertion of his right was timely. See, Steward, 543 P.2d at 182. However, future litigants are reminded that in the past failure to object to lack of a speedy trial until the eve of trial shows a lack of actual interest which should be considered in balancing the Barker factors. State v. Carden (1977), 173 Mont. 77, 566 P.2d 780; 626 F.2d 82 (9th Cir. 1980), cert. denied 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473.

The final Barker factor is "prejudice to the defendant." In Barker, the United States Supreme Court identified three interests of a defendant which may be prejudiced by a delay in coming to trial. The interests are: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532.

6

Applying those factors to this case we find that, regardless of how the various periods of delay are attributed, the total length of delay did not prejudice the defendant.

First of all, there was no pretrial incarceration attributable to these charges. Mooney was already in prison on an unrelated conviction and would have remained in prison on that conviction beyond the date on which this case was tried. It is true that where the circumstances of imprisonment change for the worse because of subsequent charges pretrial incarceration can be a factor causing prejudice to the defendant, even though he would have remained in prison under other circumstances during that same period of time. Smith v. Hooey (1969), 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607. However, the evidence in this case is that defendant had been housed in maximum security at the time of the offense with which he was charged and that he remained in maximum security. There is no evidence in the record regarding any rights, privileges, or benefits that were lost by the defendant as a result of the charges which were pending against him.

Second, there is nothing in the record to indicate that the time involved in coming to trial caused any additional or unusual anxiety and concern to the defendant. It is presumed that in every case, a person who has felony charges pending against him will experience anxiety and concern because of those charges. However, there is no evidence that in this case those feelings were aggravated or made worse by conduct on the part of the State or

7

because of the length of time that occurred from the time of defendant's arrest until his trial.

The final and most important consideration in deciding whether there was prejudice to the defendant is the consideration of whether his defense was impaired by the delay. We conclude that it was not.

The State called three correctional officers and the prison nurse as witnesses at the time of trial. In essence, they testified that on May 23, 1989, the defendant was released from his cell in the maximum security section of the prison so that he could go to the shower room for a shower. Tallon Miller, who was a correctional officer, was present in the shower room. The defendant grabbed him by the collar and punched him in the head. As a result of the blow, Miller developed a painful bump on his head.

The defendant did not deny that he assaulted Miller. Instead, he called three other inmates as witnesses. All of them were housed in the same maximum security cell block in which defendant was housed at the time of his alleged offense. They described an incident that occurred several days prior to May 23 when Miller was bringing food to the defendant. They testified that Miller appeared to spit into the food before passing the tray to the defendant; that defendant rejected the tray; and that Miller called the defendant a "punk." They testified that the term "punk" is an extremely derogatory term in prison vernacular, and that if Mooney

had failed to respond, his failure would have exposed him to ridicule and potential abuse from other inmates. In spite of this evidence, the jury found that Mooney's conduct was unjustified.

There is no evidence that Mooney would have called witnesses who were unavailable due to the passage of time or that he had any evidence to offer other than that which was offered. For these reasons we conclude that his defense was in no way impaired by the passage of time.

We hold that under the four-factor balancing test of Barker, Mooney was not denied his right to a speedy trial, and the District Court did not err in denying the defendant's motion to dismiss.

We affirm the defendant's conviction in the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9