No. 97-183

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 186

CITY OF BILLINGS,

Plaintiff and Respondent,

v.

RODNEY BRUCE,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Matthew J. Wald, Attorney at Law; Miles City, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Patricia J. Jordan,

Assistant Attorney General; Helena, Montana

Craig C. Hensel, Deputy City Attorney; Billings, Montana

No

Submitted on Briefs: January 15, 1998

Decided: July 29, 1998

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶ Rodney Bruce appealed to the District Court for the Thirteenth Judicial District in Yellowstone County from a misdemeanor conviction in the City Court for the City of Billings for the offense of stalking. He moved to dismiss the charges based on a violation of his right to speedy trial in both the City Court and District Court, and based on a violation of his due process rights. The District Court denied the motions. Bruce pled guilty and reserved his right to file this appeal from the denial of his motions. We reverse the District Court's order.

¶ Bruce raises three issues on appeal:

¶ 1. Was Bruce denied his constitutional right to a speedy trial in the District Court?

¶ 2. Was Bruce denied his constitutional right to a speedy trial in the City Court?

¶ 3. Did the document which charged Bruce in the City Court violate his constitutional right to due process because it failed to provide adequate notice?

FACTUAL BACKGROUND

¶ On May 19, 1994, Rodney Bruce was charged in the City Court for the City of Billings with the misdemeanor offense of stalking, in violation of § 45-5-220(1)(a) and (b), MCA. The complaint alleged that Bruce committed the offense during the period from June 1993 through May 1994. He was arraigned on May 30, 1994, and a trial in City Court was set for September 30, 1994.

¶ At the omnibus hearing on September 20, 1994, Bruce claimed the stalking statute was unconstitutional and filed a motion to dismiss. A few days later, he requested a continuance and, together with the motion and a request to interview more witnesses, he filed a waiver of his right to a speedy trial. Trial was reset for February 8, 1995, and a hearing on the constitutionality of the statute was set for January 17, 1995, but reset for January 24, 1995, due to a conflict with the schedule of Bruce's counsel. However, on January 17, 1995, his counsel moved to withdraw. The City Court granted the motion and reset the trial for July 12, 1995.

¶ New counsel took over for Bruce in May 1995, and at the pretrial conference on July 3, 1995, he moved to dismiss based on the 407-day delay since the initial arraignment. Without a response from the City, the City Court denied the motion, based on Bruce's waiver in September 1994. Bruce was convicted of the crime charged following a three-day jury trial which had commenced on July 12. On July 18, 1995, Bruce appealed the verdict and the denial of his motions to the District Court.

¶ On August 23, 1995, District Judge G. Todd Baugh set a date for the omnibus hearing and for trial. The next day, however, Bruce moved to substitute judges, and Judge Robert Holmstrom took over the case. On August 28, the City sought substitution of Judge Holmstrom, and the matter was assigned to Judge Russell Fagg. On September 15, Judge Fagg disqualified himself, and on September 18, the case was assigned to Judge Maurice Colberg. On September 25, the District Court set the omnibus hearing for October 12, and the trial date for November 13, 1995.

¶ At the omnibus hearing on October 12, the parties indicated their intent to file motions. In response, the District Court ordered that all motions be filed by November 1, 1995, and that the response briefs be filed by November 13; in the event that an evidentiary hearing on the motions was necessary, it was scheduled for November 16. Bruce moved to dismiss for denial of due process and for denial of his right to speedy trial. The City moved to amend its complaint to extend the period

covered by the charge through August 1994, and on November 3 the District Court granted that motion.

¶ On November 13, 1995, the City also moved to continue the evidentiary hearing. It based its motion on the fact that Bruce had subpoenaed a number of individuals from the City Court whose schedules could not be rearranged on short notice. A week later, it filed its response to Bruce's motion to dismiss.

¶ No further action in the matter took place until May 6, 1996, nearly six months later, when the District Court ordered the parties to appear by telephone conference on May 20, 1996. It appears that counsel for each party had been discussing a separate matter, and counsel for Bruce asked whether the City had dismissed the case. The conversation prompted the City to contact the District Court and schedule the telephone conference.

¶ On May 23, 1996, the District Court ordered that a hearing be set for June 12, 1996, and that all motions be filed by May 24; all responsive briefs were to be filed by May 31, 1996. On May 24, Bruce filed a motion to dismiss based solely on the denial of his right to speedy trial. In support of his motion, he alleged that all but one of the 353 days of delay that had occurred in the District Court by that time should be attributed to the City. In response to the motion, on May 30, the City moved for a continuance of an additional week so that it could submit its response to the motion to dismiss; the District Court granted the City leave to file its brief by June 7. However, on June 6, the City requested a second continuance, until June 14, by which to respond. It eventually filed its response on June 13.

¶ On June 10, 1996, the parties filed a stipulation to continue the hearing set for June 12, 1996. The parties agreed in the stipulation that any delay between June 12 and the date of the hearing would not be held against either party for purposes of the speedy trial motion. On June 24, the District Court granted the parties' request and reset the hearing for August 22, 1996. On the day of the hearing, the City moved for a continuance due to the unavailability of a City Court Judge who had been subpoenaed by Bruce. The District Court granted the continuance, and on September 30, 1996, reset the hearing at which to consider the motions for October 16, 1996.

¶ At the hearing on October 16, Bruce's former counsel testified regarding the

problems he encountered with Bruce's defense as a result of the delay, including the unavailability of two witnesses and the impaired memory of those who were still available. Bruce did not appear at the hearing, but he submitted an affidavit in which he stated that the delay caused him anxiety, resulted in the unavailability of certain witnesses, and hindered his defense.

¶ On November 1, the District Court set a trial date for December 2, 1996. On November 27, 1996, the District Court denied Bruce's motions to dismiss. The parties agreed to waive a jury trial, and the District Court rescheduled the trial for December 9, 1996. On December 9, Bruce pled guilty and reserved his right to appeal the denial of his motions.

## DISCUSSION

¶ Was Bruce denied his constitutional right to a speedy trial in the District Court?

¶ Whether a defendant has been denied a speedy trial constitutes a question of constitutional law. *See State v. Small* (1996), 279 Mont. 113, 116, 926 P.2d 1376, 1378; *see also State v. Bullock* (1995), 272 Mont. 361, 368, 901 P.2d 61, 66. We review a district court's conclusions of law to determine whether its interpretation of the law is correct. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; *see also Kreger v. Francis* (1995), 271 Mont. 444, 447, 898 P.2d 672, 674; *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

¶ Since 1972, we have reviewed claims that a speedy trial was denied in violation of the Sixth Amendment to the United States Constitution, and Article II, Section 24, of the Montana Constitution, based on the general guidelines established by the United States Supreme Court in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101. *See, e.g., Bullock*, 272 Mont. at 368-69, 901 P.2d at 67; *State v. Sunford* (1990), 244 Mont. 411, 416, 796 P.2d 1084, 1087; *Fitzpatrick v. Crist* (1974), 165 Mont. 382, 388, 528 P.2d 1322, 1325. The *Barker* test requires that we consider: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right to a speedy trial by the defendant; and (4) the prejudice to the defense. *See Barker*, 407 U. S. at 530, 92 S. Ct. at 2192, 33 L. Ed. 2d at 117. Prejudice to the defense can be established based on any of the following factors: (1) pretrial incarceration; (2) anxiety and concern to the defendant; and (3) impairment of the defense. *See Barker*,

**407 U.S. at 532, 92 S. Ct. at 2193, 33 L. Ed. 2d at 118. Of these concerns, the Supreme Court stated the following about their order of importance:**

Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker*, 407 U.S. at 532, 92 S. Ct. at 2193, 33 L. Ed. 2d at 118.

**¶ However, the four factors established by *Barker* are necessarily general guidelines to be applied on a case-by-case basis to the unique circumstances of each case. "In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193, 33 L. Ed. 2d at 118. Perhaps for that reason, commentators have noted the seemingly inconsistent results from *Barker*'s application. As noted by one author:**

Because the right is so "amorphous," "slippery," and generally difficult to vindicate, courts have not applied a consistent legal standard in speedy trial cases. Indeed, federal appellate courts' speedy trial rulings throughout this century have portrayed the right as somehow less fundamental and more contingent than other procedural safeguards in the Bill of Rights. This treatment reflects the orthodoxy that the right to a speedy trial is the one criminal procedural guarantee in the Constitution that must be limited by the countervailing demands of "public justice." In other words, courts have typically held--and most academic commentators have agreed--that the Sixth Amendment provides relief for defendants suffering from trial delays only where society lacks a countervailing interest in continuing to hold them for trial.

Brian P. Brooks, *A New Speedy Trial Standard for* Barker v. Wingo*: Reviving a Constitutional Remedy in an Age of Statutes*, 61 U. Chi. L. Rev. 587, 588 (1994).

¶ **Montana's experience in dealing with speedy trial issues mirrors the national experience described by Mr. Brooks in his article. For example, we have considered the first factor, the length of delay, as both a triggering mechanism which justifies further speedy trial analysis,** *see State v. Dahms* **(1992), 252 Mont. 1, 12, 825 P.2d 1214, 1220, and as a factor which, if sufficient in length, can shift the burden to the State to disprove that prejudice has occurred.** *See State v. Carden* **(1977), 173 Mont. 77, 85, 566 P.2d 780, 784.**

¶ **However, the length of delay that we have found necessary to trigger further speedy trial analysis has varied from case to case. In** *Dahms***, 252 Mont. at 12, 825 P.2d at 1220-21, we stated that "[i]n [***State v.* **]***Wombolt* **[(1988), 231 Mont. 400, 753 P.2d 330], we set out a number of recent decisions indicating that delays over 200 days will usually trigger the full analysis." However, we also recognized that we had previously held a 175-day delay sufficient to trigger the presumption.** *See State v. Bartnes* **(1988), 234 Mont. 522, 764 P.2d 1271;** *see also State v. Bailey* **(1982), 201 Mont. 473, 655 P.2d 494 (186 days triggered the presumption);** *State v. Fife* **(1981), 193 Mont. 486, 632 P.2d 712 (194 days triggered the presumption). Nevertheless, in** *Dahms* **we held that a 161-day delay was not a sufficient delay to require further analysis.** *See Dahms***, 252 Mont. at 12, 825 P.2d at 1221.**

¶ **We later cited** *Dahms* **for the proposition that 200 days usually triggers the analysis.** *See State v. Thompson* **(1993), 263 Mont. 17, 32, 865 P.2d 1125, 1135;** *see also State v. Eklund* **(1994), 264 Mont. 420, 424, 872 P.2d 323, 326 (relying on** *Thompson* **for the same proposition). We have not, however, considered 200 days as a necessary threshold. First,** *Thompson* **introduced the 200-day proposition from** *Dahms* **immediately after citing** *Dahms* **for the notion that the length of delay is case specific.** *See Thompson***, 263 at 32, 865 P.2d at 1134-35. Second, in** *Eklund***, the Court held that "197 days is presumptively prejudicial . . . given the close proximity to the 200-day trigger."** *Eklund***, 264 Mont. at 424, 872 P.2d at 326. More recent cases, though, have referred to 200 days as the length of delay which will trigger a full** *Barker* **analysis.** *See State v. Williams-Rusch* **(1996), 279 Mont. 437, 449, 928 P.2d 169, 176-77;** *State v. Collier* **(1996), 277 Mont. 46, 54, 919 P.2d 376, 382.**

¶ **Although we have been consistent in our statements that a delay sufficient to trigger further analysis also creates a presumption of prejudice, we have likewise been inconsistent in our application of that presumption.**

¶ **We first discussed the effect of presumptive prejudice in *Fitzpatrick*, 165 Mont. at 388, 528 P.2d at 1326, where we were concerned with a delay of seven months. There we held that:**

We emphasize this delay is not considered a *per se* violation of petitioner's right to a speedy trial, but under the circumstances here it is thought long enough to shift to the state the burden of explaining the reason for the delay and showing absence of prejudice to petitioner.

¶ **In *State v. Steward* (1975), 168 Mont. 385, 389, 543 P.2d 178, 181, we cited with approval *United States v. Rucker* (D.C. Cir. 1972), 464 F.2d 823, 825, where that court held that:**

A delay of over one year between arrest and trial raises a Sixth Amendment claim of "prima facie merit." *Hedgepeth v. United States*, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966). It places on the Government the necessity of justification, the burden of which increases with the length of delay. . . . When the delay approaches a year and a half, as in this case, the Government must provide a justification which convincingly outweighs the prejudice which can normally be assumed to have been caused the defendant.

¶ **In *State ex rel. Sanford v. District Court* (1976), 170 Mont. 196, 199, 551 P.2d 1005, 1007, we held that a ten-month delay between arraignment and trial established a**

*prima facie* **case of denial of the right to a speedy trial.**

**¶ In *Fife*, 193 Mont. at 491, 632 P.2d at 715, we cited *Moore v. Arizona* (1973), 414 U. S. 25, 26, 94 S. Ct. 188, 189, 38 L. Ed. 2d 183, 185, for the principle that "*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial."**

**¶ In *State v. Britton* (1984), 213 Mont. 155, 689 P.2d 1256, we had the following to say about the presumption of prejudice from a delay which was less than the delay in this case:**

Here it was the State's burden to rebut the presumption of prejudice caused by the 396-day delay. The State has not sufficiently done so, and we therefore conclude the delay has resulted in prejudice to the defendant. . . . [I]t is nonetheless clear defendant had no duty to prosecute himself and the State had the burden to proceed in a manner that would protect his constitutional right to a speedy trial. The State did not do so, and the delay continued with the State giving no constitutionally acceptable explanation for the substantial delay.

*Britton, 213 Mont. at 162-63, 689 P.2d at 1261.*

*¶ In State v. Waters (1987), 228 Mont. 490, 743 P.2d 617, we explained the effect of "presumptive prejudice" as follows:*

*The delay in the instant case gives rise to a rebuttable presumption of prejudice. In order to rebut the presumption, the State must come forward with evidence showing that the defendant was not prejudiced by the delay and that there is a reasonable excuse.*

*Waters, 228 Mont. at 493, 743 P.2d at 619 (citing State v. Ackley (1982), 201 Mont. 252, 256, 653 P.2d 851, 853).*

*¶ We have followed the rule that a delay less than that found in this case gives rise to a presumption of prejudice which must be rebutted by direct evidence produced by the State in State v. Matthews (1995), 271 Mont. 24, 28, 894 P.2d 285, 287, State v. Heffernan (1991), 248 Mont. 67, 71, 809 P.2d*

*566, 568, State v. Curtis (1990), 241 Mont. 288, 299, 787 P.2d 306, 313, State v. Wombolt (1988), 231 Mont. 400, 403, 753 P.2d 330, 331, State v. Haskins (1986), 220 Mont. 199, 202, 714 P.2d 119, 121, State v. Cutner (1984), 214 Mont. 189, 192, 692 P.2d 466, 467, State v. Chavez (1984), 213 Mont. 434, 443, 691 P.2d 1365, 1370, State v. Tiedemann (1978), 178 Mont. 394, 399, 584 P.2d 1284, 1288, and State v. Cassidy (1978), 176 Mont. 385, 390, 578 P.2d 735, 738. We have also recently applied the rule in State v. Tweedy (1996), 277 Mont. 313, 320, 922 P.2d 1134, 1138, where the delay was greater than the delay in this case.*

*¶ Only recently, and without either distinguishing or reversing our earlier cases, have we begun paying lip service to "presumptive prejudice," but placing the burden on the defendant to prove prejudice. See State v. Keating (Mont. 1997), 949 P.2d 251, 259, 54 St. Rep. 1250, 1254-55; Williams-Rusch, 279 Mont. at 452, 928 P.2d at 178-89; State v. Lane (1996), 279 Mont. 128, 134, 927 P.2d 989, 992-93; State v. Moore (1994), 268 Mont. 20, 69-70, 885 P.2d 457, 487-88.*

*¶ Those recent cases, including this case, which have shifted the burden to the defendant to disprove prejudice, ignore the effect of the presumption which has been established by our earlier decisions.*

*A presumption has been defined as an inference as to the existence of one fact from the existence of some other fact founded on logic or on a previous experience of their connection. A true presumption is a rule of law laid down by the courts which attaches to facts certain procedural consequences, such as the shift in the burden of evidence production. . . .*

*. . . A presumption . . . attaches definitive probative value to certain facts. If the presumption is conclusive, it mandates a particular conclusion; if it is rebuttable, it mandates the conclusion in the absence of contradictory evidence.*

*22A C.J.S. Criminal Law § 695 (1985).*

*¶ Furthermore, the presumption of prejudice, at some point in time, is well-founded and this Court's recent decisions ignore those decisions of the United States Supreme Court which point out why prejudice is often difficult to prove and why a defendant cannot always be held to the burden of such proof in a state court's speedy trial analysis.*

*¶ In Barker, the Court pointed out that delay skews the fairness of the entire judicial system, and that*

*even without the disappearance of witnesses, there is likely to be prejudice by the passage of time when witnesses are unable to recall accurately the events about which they testify. Most importantly, the Court in that case pointed out that "[l]oss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." Barker, 407 U.S. at 532, 92 S. Ct. at 2193, 33 L. Ed. 2d at 118.*

*¶ In Moore, the Supreme Court reversed the Arizona Supreme Court's denial of a defendant's motion to dismiss based on the Arizona Court's conclusion that the defendant had not made an affirmative demonstration of prejudice. The U.S. Supreme Court held that:*

*The state court was in fundamental error in its reading of Barker v. Wingo and in the standard applied in judging petitioner's speedy trial claim. Barker v. Wingo expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial[.]*

*. . . .*

*Moreover, prejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings. Inordinate delay,*

> *'wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty whether he is free on bail on not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.' United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed. 468 (1971).*

*Moore, 414 U.S. at 26-27, 94 S. Ct. at 190, 38 L. Ed. 2d at 186 (footnote omitted).*

*¶ Most recently, in Doggett v. United States (1992), 505 U.S. 647, 112 S. Ct. 2686, 120 L. Ed. 2d 520, the Supreme Court reversed the denial of a defendant's motion to dismiss on speedy trial grounds, even though no demonstration of prejudice had been established. There, the Court stated:*

*[C]onsideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim. Barker explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.*

*Doggett, 505 U.S. at 655-56, 112 S.Ct. at 2692-93, 120 L. Ed. 2d at 530-31 (citations omitted).*

**¶ Finally, the Supreme Court, in Doggett, concluded that:**

*When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, see n.1., supra, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, e.g., 407 U.S. at 534-536, 92 S.Ct. 2194-2195, <u>nor persuasively rebutted</u>, the defendant is entitled to relief.*

*Doggett, 505 U.S. at 658, 112 S.Ct. at 2694, 120 L. Ed. 2d at 532 (emphasis added; footnotes omitted).*

**¶ For those reasons articulated in the preceding paragraphs, i.e., the purposes that the speedy trial requirement serves, the difficulty of proving the extent to which witnesses' memories have been impaired, and the fact that in most instances only the State can bring the defendant to trial in an expeditious fashion, we conclude that the rebuttable presumption of prejudice established by our earlier cases is not only the better public policy, but that it is constitutionally required. However, in recognition that the only remedy for denial of speedy trial is dismissal of the State's case, see Strunk v. United States (1973), 412 U.S. 434, 440, 93 S. Ct. 2260, 2263-64, 37 L. Ed. 2d 56, 61, and in recognition of the countervailing demands of "public justice" recognized generally by both courts and academic commentators, we will, later in this opinion, state more clearly than we have in the past the point at which and the circumstances under which the presumption of prejudice will attach.**

**¶ A second area where our decisions have been at least arguably inconsistent is our consideration of the third Barker factor, the assertion of the right to a speedy trial by the defendant. We have**

*repeatedly held that so long as a defendant asserts his or her right to a speedy trial prior to the commencement of trial, the assertion is timely, and we have relied on language from Barker, 407 U.S. at 527, 92 S. Ct. at 2190, 33 L. Ed. 2d at 115, for the principle that:*

*The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty . . . .*

*¶ In Steward, 168 Mont. at 390-91, 543 P.2d at 182, we held that:*

*The general rule remains that an accused must take some affirmative action to obtain a trial to be entitled to a discharge for delay. 22A C.J.S. Criminal Law § 469, p. 37. In United States v. Research Foundation, D.C., 155 F.Supp. 650, 654, the court said:*

> *"* * * The burden is on the defendant to assert his constitutional right by some affirmative act in court, such as, objecting to adjournments of the trial, demanding a trial, or making an appropriate motion."*

*The "appropriate motion" is a motion to dismiss for denial of a speedy trial. The proper time to assert the right to a speedy trial is prior to the actual commencement of the trial, usually at the time the trial date is set, or the time the case is called to trial. Morse v. Municipal Court, et al., 13 Cal.3d 149, 118 Cal.Rptr. 14, 529 P.2d 46. Defendant, in the instant case, made his motion to dismiss at the proper time. [Steward's motion was made at the time of arraignment.]*

*(Emphasis added.)*

*¶ In Fife, 193 Mont. at 490-91, 632 P.2d at 715, we held that:*

*The third test is whether there has been a timely assertion of the right by defendant. A motion to dismiss for denial of speedy trial made by the defendant prior to the commencement of the trial is an "appropriate motion" which fulfills this requirement. State v. Steward (1975), 168 Mont. 385, 390, 543 P.2d 178, 182. The appellant properly asserted his right with such a motion four days prior to trial.*

*The State contends we should consider that the appellant failed to put the State on notice by earlier communicating his desire for a speedy retrial. This is not the law. ". . . (I)t is not the duty of defendant to bring himself to trial." Larson, 623 P.2d at 958.*

*¶ In State v. Bailey (1982), 201 Mont. 473, 479, 655 P.2d 494, 498, we noted that:*

*The State, when discussing this factor [assertion of the right], urges this Court to adopt the position that Bailey's assertion was sufficient to raise inquiry as to whether the right was denied, but is insufficient to sustain the defendant's claim on its merits because the right was not asserted often enough.*

*However, we held that "this is not the case, because as long as the defendant has asserted his right to speedy trial prior to trial, he has met the third factor in this test; State v. Steward (1975), 163 Mont. 385, 543 P.2d 178, 182; State v. Larson, 623 P.2d at 958." Bailey, 201 Mont. at 479-80, 655 P.2d at 498.*

*¶ In State v. Britton (1984), 213 Mont. 155, 161-62, 689 P.2d 1256, 1260, we reaffirmed our prior position with the following explanation:*

*Our rule is that if a defendant has moved to dismiss before trial, he has fulfilled the requirement of*

*asserting his constitutional right to a speedy trial. State v. Bailey (Mont. 1982), [201 Mont. 473,] 655 P.2d 494, 498. The trial court, on the other hand, held defendant was tardy in asserting his right to a speedy trial by first raising it at the omnibus hearing on July 15, 1983, more than eleven months after the complaint had first been filed in Justice Court. The trial court did not indicate when that magic time was, but simply ruled that defendant's motion was too late. However, delay of assertion of the right to speedy trial is not measured simply by measuring the lapse of time from the time of the charge until the time the motion is made. Rather, the sole inquiry is whether defendant has moved before trial to dismiss on the ground that he has been denied a speedy trial. The United States Supreme Court stated in Barker v. Wingo, supra, that "[t]here is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial." 407 U.S. at 521, 92 S. Ct. at 2187. We adopt this same position when interpreting our own Constitution. In holding that the defendant in effect waived his right to assert his right to a speedy trial because his motion at the omnibus hearing came too late, the trial court was clearly wrong.*

**¶ We reaffirmed our traditional rule regarding the defendant's timely assertion of the right to a speedy trial, if made before trial, in Tweedy, 277 Mont. at 321, 922 P.2d at 1139, Waters, 228 Mont. at 493-94, 743 P.2d at 620, and Haskins, 220 Mont. at 202, 714 P.2d at 121.**

**¶ We first suggested that there might be varying degrees of timely assertion in State v. Mooney (1991), 248 Mont. 115, 119-20, 809 P.2d 591, 594, where it was suggested in dictum that:**

*[F]uture litigants are reminded that in the past failure to object to lack of speedy trial until the eve of trial shows a lack of actual interest which should be considered in balancing the Barker factors. State v. Carden (1977), 173 Mont. 77, 566 P.2d 780, 626 F.2d 82 (9th Cir. 1980), cert. denied, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473.*

**¶ Although the gratuitous advice in Mooney was probably ill-founded based on the unique facts of the Carden decision upon which it was based, it has since assumed a life of its own in subsequent decisions of this Court. See State v. Deavila (Mont. 1997), 949 P.2d 1185, 1188, 54 St. Rep. 1300, 1301; Keating, 949 P.2d at 257, 54 St. Rep. at 1253; Williams-Rusch, 279 Mont. at 451, 928 P.2d at 178; Lane, 279 Mont. at 133, 927 P.2d at 992; Thompson, 263 Mont. at 32-33, 865 P.2d at 1135. However, in none of the more recent cases which suggest that the time when the right to speedy trial**

*was asserted should be weighed did we reverse our previous decisions to the contrary or address policy reasons for our previous decisions.*

*¶ We conclude that for the reasons stated in our earlier decisions, and especially, the compelling policy argument against waiver of a constitutional right, there is no magical time for assertion of the right to a speedy trial which should be weighed more favorably to the defendant than some other time. So long as the defendant asserts his or her right to a speedy trial by a motion to dismiss on speedy trial grounds filed prior to the time of trial, we conclude that the defendant has satisfied the third-prong of the Barker test and that further analysis of that prong is not only unnecessary, but inappropriate. Analysis of when in a long period of delay, or how often during a long period of delay a defendant asserts the right to a speedy trial, makes an already subjective and arbitrary review process even more so. In the interests of consistency, predictability, and justice, our purpose should be to establish more objective criteria for prosecutors, defense lawyers, and district courts to evaluate speedy trial issues. The trend of subjectively evaluating the date on which each appellant has asserted his or her right to a speedy trial is the antithesis of that objective.*

*¶ We also note that there is disagreement nationally about the respective weight to be given each of the Barker factors when conducting a speedy trial analysis and that our own decisions have not been consistent in that regard. While earlier decisions placed greater emphasis on the length of delay without regard to demonstrable prejudice, see, e.g., Sanford, 170 Mont. 196, 551 P.2d 1005, later decisions have placed greater emphasis on the defendant's failure to demonstrate prejudice regardless of the length of delay. See, e.g., Williams-Rusch, 279 Mont. 437, 928 P.2d 169.*

*¶ In this regard, various approaches have been described for purposes of balancing the four Barker considerations. They have been referred to as: (1) the straight balancing test, (2) the weighted balancing test, and (3) the motive test. See Brooks, A New Speedy Trial Standard for Barker, 61 U. Chi. L. Rev. at 592-94, 608.*

*¶ The straight balancing test considers each of the four factors equally, and no single factor is decisive. For example, if the length of delay is great enough, or the State is sufficiently culpable in causing delay, prejudice is unnecessary. On the other hand, if prejudice is extreme, the length of delay required is less. See Brooks, A New Speedy Trial Standard for Barker, 61 U. Chi. L. Rev. at 592-93.*

*¶ The weighted balancing test considers each factor, but places the greatest emphasis on whether or not there has been prejudice to the defendant. Without prejudice to the defendant, it would be very unlikely that even lengthy delay or culpable delay by the State would result in dismissal for denial of a speedy trial. See Brooks, A New Speedy Trial Standard for Barker, 61 U. Chi. L. Rev. at 593-94.*

*¶ The motive test gives greatest consideration to the second Barker factor, the reason for delay. The greater the degree of fault by the State in causing the delay, the less the delay or prejudice that need be shown. Where there is no fault on the part of the State for delay, greater prejudice, and presumably*

greater delay, would have to be shown. *See Brooks, A New Speedy Trial Standard for Barker,* 61 U. Chi. L. Rev. at 610.

¶ It is our intention to adopt a method for analysis of speedy trial claims which includes features of both the "straight balancing test" and the "motive test." For purposes of this case and future cases, we will apply the Barker factors in the following manner to determine whether a defendant has been denied his or her right to a speedy trial in violation of the Sixth Amendment to the United States Constitution, or Article II, Section 24, of the Montana Constitution.

¶ 1. We will first consider the length of delay from the time charges are filed (or as in this case, the date on which the notice of appeal from the city court is filed) until the defendant's trial date for the purpose of determining whether there is a basis for conducting a speedy trial analysis. This period of time will be calculated without assignment of fault to either party for the various periods of delay. This period of time has been referred to, in the past, as the "trigger" for speedy trial analysis. Based on our prior decisions, we establish 200 days as the necessary length of time to trigger further speedy trial analysis. However, length of delay will also be considered later in our analysis after responsibility for various periods of delay has been assigned.

¶ 2. We will next consider the reason for delay. This is something that we have, in the past, assigned to either the State or the defendant, based on the unique facts in each case. We see no reason to change this part of our analysis because it will necessarily vary from case to case. However, after we have determined how many days of delay are attributable to the State, we will next determine whether that length of delay is sufficient to shift the burden to the State to demonstrate that the defendant has not been prejudiced by the delay. We conclude that when it has been demonstrated that 275 days of delay is attributable to the State, the burden should shift to the State to demonstrate that the defendant has not been prejudiced by the delay. The State's proof should take into consideration, but need not include, all three traditional bases for prejudice: (a) pretrial incarceration, (b) anxiety and all of its attendant considerations, and (c) impairment of the defense. In considering whether the State has met its burden, the district court should take into consideration the fact that direct proof of a defendant's state of mind may not always be possible, and that the State's ability to anticipate the nature of the defendant's defense may vary from case to case. Therefore, there may be cases where the State can satisfy its burden without demonstrating a lack of prejudice based on each consideration. Once the State has demonstrated lack of prejudice based on one or more of these considerations, the burden will then shift to the defendant to demonstrate prejudice and the district court will have to weigh the evidence of each party. If the delay attributable to the State is less than 275 days, the burden remains on the defendant to demonstrate prejudice. At some point in time (which we leave for future consideration), however, the mere passage of time must necessarily be considered sufficient to conclusively establish denial of the right to speedy trial. *See generally Doggett,* 505 U.S. 647 112 S. Ct. 2686, 120 L. Ed. 2d 520. Furthermore, where the delay is both excessive (but not sufficient to establish a conclusive presumption of prejudice, as required by *Doggett*), an intentional, demonstration of prejudice may not be necessary. *See Moore,* 414 U.S. at 27, 94 S. Ct. at 190, 38 L. Ed. 2d at 186.

*¶ 3. When we consider the third Barker factor, whether the defendant's right to speedy trial has been timely asserted, we will follow those decisions in which we have held that if the right to speedy trial is invoked at any time prior to the commencement of trial, either by demanding a speedy trial, or by moving to dismiss for failure to provide a speedy trial, the third prong is satisfied. However, we will require that once a motion to dismiss for denial of speedy trial has been made, that it be ruled upon by the district court before commencement of trial. We also note, as a practical matter, that unless a motion to dismiss for speedy trial has been made at least ten days prior to the commencement of trial, it may be difficult for the State to adequately brief the issue, and for the court to adequately consider the issue, without postponing the existing trial date. Therefore, any delay directly attributable to a motion to dismiss based on denial of speedy trial which is filed less than ten days prior to the commencement of trial will be assigned to the defendant.*

*¶ 4. Our consideration of the fourth Barker factor, which relates to prejudice, will continue to include those traditional considerations: (a) pretrial incarceration, (b) anxiety and all of the practical applications that have been articulated by the U.S. Supreme Court, and (c) impairment to the defense. However, the importance of this factor and the degree of prejudice to establish denial of speedy trial will vary based upon other considerations, such as the length of delay and the reason for delay.*

*¶ Applying this approach to the facts in this case, we first note that the length of delay, which was 508 days from the time of appeal to the ultimate date of trial, is sufficient to trigger further analysis of whether Bruce was denied his right to a speedy trial.*

*¶ Next, we consider whether any of the 508-day delay is attributable to Bruce. In this case, Bruce moved for no continuances, nor did he, through other maneuvers, prevent the City from bringing him to trial in a timely fashion. Bruce did move to substitute the judge to whom the case was originally assigned; however, that substitution was accomplished on the same date. The original trial date was vacated because both parties expressed the need to file motions; however, Bruce was no more at fault for that delay than was the City. Furthermore, when the District Court established a date for submission of those motions, the defendant fully complied. Subsequent hearings to consider the parties' motions were continued at the request of the City.*

*¶ Bruce did agree to continue a hearing from June 12 to August 22, 1996, and did agree that the amount of time resulting from that delay would not count against the City for purposes of speedy trial analysis. However, that period of delay accounts for only 61 days, and leaves 447 days of delay which was either institutional or caused directly by the prosecution. In either event, it is charged to the City. See State v. Hembd (1992), 254 Mont. 407, 413, 838 P.2d 412, 416.*

*¶ Here, the longest delay occurred between November 1995 and May 1996, a span of nearly six months. Neither party has provided a reason for the delay, although the lack of an explanation by the City and the complete void in the District Court record seem to reflect that the delay occurred mainly because the District Court and the City had simply neglected the matter. Nonetheless, the District Court described it as institutional, refused to use it as grounds on which to find a violation of Bruce's*

*right to speedy trial, and even implied that Bruce was partially responsible for the delay. The court stated: "What always troubles me in these cases, I never have the defendant asking me to set something for trial. They just bushwack you at the end when you've got a problem."*

¶ *However, the City bears the burden of prosecution, and a defendant is under no obligation to ensure diligent prosecution of the case against him or to help the City avoid dismissal for failure to timely prosecute him. See Tweedy, 277 Mont. at 318-20, 922 P.2d at 1137-38.*

¶ *The District Court stated that the delay was precipitated by Bruce's "extensive motions" after the October 1995 hearing, and the fact that he subpoenaed key personnel from the City Court. It suggested that his actions were an intentional attempt to set up a claim of denial of speedy trial. For example, it quoted our holding in State v. Wirtala (1988), 231 Mont. 264, 752 P.2d 177, in which we stated:*

*The right to a speedy trial . . . is not designed to reward a criminal defendant who artificially creates delay through an avalanche of motions and hearings. Nor does the right protect a defendant who makes a transparent assertion of the right or sleeps on his rights during the course of a proceeding only to belatedly claim injustice as the day of reckoning draws near.*

*Wirtala, 231 Mont. at 268, 752 P.2d at 180 (citation omitted). However, we disagree with the District Court's characterization of the reasons for the delay, and conclude that Bruce did not here attempt to "create delay through an avalanche of hearings and motions." In fact, we note that Bruce's motions were filed in accordance with the schedule set by the District Court, and that they represented arguments he had raised initially in the City Court. We have no reason to believe that they were "artificially" made to create delay in the District Court. We further note that Bruce was not the unilateral source of delay after the omnibus hearing; the City also filed motions after the hearing in October 1995. Finally, the City's subsequent motion to continue the evidentiary hearing was made because of scheduling problems for witnesses who had been subpoenaed, not so that it could respond to Bruce's motions.*

¶ *Neither the City nor the District Court suggest that consideration of Bruce's motions necessitated over six months of total inactivity. Additionally, despite the fact that all parties, including the District Court, had been aware in November 1995, of the scheduling problems created by Bruce's subpoenas, there is no indication that those problems, or any other aspect of this case, were even addressed during the delay. Finally, the record seems to reflect that the primary reason this matter was even remembered in May 1996, was the fortuitous fact that Bruce's counsel alluded to it when he and counsel for the City were discussing another matter.*

¶ *Based on our holding that the City is responsible for 447 days of delay which was either institutional or caused by the City's repeated requests for a continuance, we conclude that sufficient delay is attributable to the City of Billings to shift the burden to the City to prove that Bruce was not prejudiced by the delay.*

¶ *Bruce has satisfied the third Barker criteria by asserting his right to a speedy trial when he moved to dismiss the action against him based on denial of his right to speedy trial on May 24, 1996, well in advance of his December 9, 1996, trial date.*

¶ *When considering the fourth Barker factor, we look to the problems the speedy trial guarantee is intended to prevent: (1) pretrial incarceration, (2) anxiety and concern, and (3) impairment of defense.*

¶ *Bruce concedes that he suffered little pretrial incarceration, and none after his appeal to the District Court.*

¶ *As to the second interest, we recognize that anxiety and concern are an inherent part of being charged with a crime, and that the City's "burden to show a lack of anxiety becomes considerably lighter in the absence of more than marginal evidence of anxiety." Williams-Rusch, 279 Mont. at 452, 928 P.2d at 178; see also State v. Weeks (1995), 270 Mont. 63, 74, 891 P.2d 477, 483. Even in light of a diminished burden, however, the City's only response has been to deny that Bruce suffered any anxiety or concern. It suggests that his failure to appear at the final hearing is evidence that he did not suffer anxiety or concern, although we fail to see a logical connection between his failure to appear and his level of anxiety.*

¶ *We focus instead on the third interest. Although prejudice is presumed and it is the State's burden to rebut it, the only evidence relating to impairment was presented by Bruce. Therefore, it is Bruce's evidence we will discuss. Bruce contends that his defense was substantially impaired by the delay. Both he and the attorney who represented him through most of this matter testified that the delay impaired the defense because he was unable to locate important witnesses, and those he could locate could not remember events that had occurred almost three years earlier.*

¶ *Prejudice from diminished memory is especially plausible based on the facts alleged in this case. For example, the charge here involves the fifteen-month period from June 1993 to August 1994; trial was eventually set for December 9, 1996. Witness testimony would necessarily encompass a prolonged period of time and, as the District Court noted, it goes without saying that witnesses' memories suffered as more time passed between the period of the alleged offense and the time of trial. We also recognize that unlike some other offenses, the nature of the charge here is very fact-sensitive, and Bruce's defense depended on all the parties' and witnesses' recollection of the period.*

¶ *Furthermore, the record indicates that at least one witness who testified in the City Court trial was lost as a result of the delay in the District Court. Bruce's former attorney testified that John Scott was his "main witness in the City Court trial" and that they had remained in contact until approximately*

*May 1996, but that he could not locate him when the hearing was set for August 1996. Neither the City nor the District Court's order addressed the potential impairment from the loss of that witness.*

*¶ For these reasons, we conclude that the City has failed to rebut the presumption that Bruce's defense was impaired.*

*¶ No single factor of the Barker analysis is determinative, and each must be weighed in light of the facts of this case to determine if Bruce was denied his right to speedy trial. See Weeks, 270 Mont. at 72, 891 P.2d at 482; Moore, 268 Mont. at 67, 885 P.2d at 486. When we consider that over 500 days of delay occurred from the time that Bruce appealed this case until the time that a trial was finally set, and that for almost half of that period the City made no effort to ensure expeditious resolution of this matter, and that Bruce was prejudiced by the loss of evidence, we conclude that the City denied Bruce his right to speedy trial.*

*¶ Although our criminal justice system is clearly strongest when a determination of each case can be made on the merits, we recognize that the system also depends on fundamental principles, such as the right to a speedy trial. The State or City must diligently pursue the prosecution of those who have been charged with a criminal offense, and when a defendant has been harmed and his defense impaired by the City's failure to reasonably and timely try him, his constitutional right to a speedy trial has been denied and a decision on the merits is not possible.*

*¶ Where a defendant's right to speedy trial has been denied, we must reverse the conviction and dismiss the claim. See State v. Barker (1993), 261 Mont. 379, 385, 862 P.2d 1112, 1116 (citing Strunk, 412 U.S. 434, 93 S. Ct. 2260, 37 L. Ed. 2d 56). Accordingly, we need not address the remaining constitutional challenges raised by Bruce. We reverse the order of the District Court and dismiss the charge that is the subject of this appeal.*

*/S/ TERRY N. TRIEWEILER*

*We concur:*

*/S/ JAMES C. NELSON*

*/S/ JIM REGNIER*

*/S/ WILLIAM E. HUNT, SR.*

No

*Justice W. William Leaphart, specially concurring.*

*¶I concur in the result reached by the Court and in the Court's ultimate method of resolving the speedy trial claims under the Montana Constitution. However, I do not agree with all of the Court's analysis with regard to the third Barker factor; that is, assertion of the right to speedy trial. The Court reviews our confusing and inconsistent precedent on assertion of the right and then, relying on language from Barker that the nature of the speedy trial right makes it impossible to pinpoint a precise time in the process when the right must be asserted or waived, concludes that "there is no magical time for assertion of the right to a speedy trial which should be weighed more favorably to the defendant than some other time. So long as the defendant asserts his or her right to a speedy trial by a motion to dismiss on speedy trial grounds filed prior to the time of trial, we conclude that the defendant has satisfied the third-prong of the Barker test and that further analysis of that prong is not only unnecessary, but is inappropriate." Although I agree that there is no magical time for assertion of the right, I do not agree that Barker rejects a weighing analysis when considering assertion of the right to a speedy trial. On the contrary, the United States Supreme Court's consideration of the tardiness and infrequency of Barker's assertion goes to the very heart of the Barker decision.*

*¶In rejecting Barker's speedy trial claim, the Court noted that, in addition to the absence of serious prejudice, the record did not indicate any action whatsoever between October 21, 1958 and February 12, 1962 which could be construed as the assertion of the speedy trial right. Although Barker did make a motion to dismiss in February 1962, the record did not show on what ground the motion was based, "[i]nstead the record strongly suggests that while he hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried." Barker, 407 U.S. at 535.*

> *We do not hold that there may never be a situation in which an indictment may be dismissed on speedy trial grounds where the defendant has failed to object to continuances. There may be a situation in which the defendant was represented by incompetent counsel, was severely prejudiced, or even cases in which the continuances were granted ex parte. But barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that*

*strongly indicates, as does this one, that the defendant did not want a speedy trial. We hold, therefore, that Barker was not deprived of his due process right to a speedy trial.*

*Barker, 407 U.S. at 536.*

**¶ It is apparent from the Supreme Court's conclusion, that, had Barker asserted his right to a speedy trial earlier on and more frequently, his speedy trial claim would have carried more weight. Although Barker eventually filed a motion to dismiss before trial, the Court concluded that his acquiescence in continuances without objection for over three years indicated that "[he] did not want a speedy trial." I do not agree that we can invoke Barker for the proposition that, so long as the defendant files a speedy trial motion sometime prior to trial, any further analysis of the timing is inappropriate. If further analysis of the timing were inappropriate, the Court would have accepted Barker's pretrial motion on its face and would not have engaged in an analysis of what Barker "really wanted" when the motion was viewed in the context of his three plus years of lying in the weeds.**

**¶ Although I do not agree that this Court's non-weighted, "either you asserted the right or you did not" approach is consistent with Barker v. Wingo, I recognize that it favors the defendant over an approach in which the timing of a speedy trial motion is scrutinized. Accordingly, since the rule adopted by this Court offers more, not less, protection to the defendant, I concur in the result.**

*/S/ W. WILLIAM LEAPHART*

*Justice Karla M. Gray joins in the foregoing special concurrence.*

*/S/ KARLA M. GRAY*

No