No. 82-100

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

_____

STATE OF MONTANA,

       Plaintiff and Appellant,

  -vs-

GORDON A. BAILEY,

       Defendant and Respondent.

_____

Appeal from:  District Court of the Fourth Judicial District,
In and for the County of Missoula, The Honorable
James B. Wheelis and The Honorable John S. Henson,
Judges presiding.

Counsel of Record:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
Robert L. Deschamps, III, County Attorney, Missoula,
Montana

    For Respondent:

        Fred R. Van Valkenburg; Smith, Connor & Van Valkenburg,
Missoula, Montana

_____

Submitted on Briefs:  September 23, 1982

Decided:  December 16, 1982

Filed: DEC 16 1982

_____
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This case comes before this Court on appeal from the District Court of the Fourth Judicial District, Missoula County. The District Court dismissd the charge of attempted sale of dangerous drugs, a felony, on the grounds that the defendant was denied his right to speedy trial.

The defendant, Bailey, was arrested and charged with the felony offense of attempted sale of dangerous drugs on February 18, 1981. He waived preliminary hearing. On March 31 an information was filed. The defendant appeared in District Court on April 22, 1981, and moved to dismiss the information on the grounds that it was filed five days beyond the thirty day time limit set out in section 46-11-203, MCA. That information was dismissed pursuant to the defendant's motion on May 26. After that dismissal and in apparent reliance on the District Court's order, the defendant moved to Indiana and obtained employment.

After the dismissal, the State submitted a motion to the District Court requesting that it be allowed to renew its original motion for leave to file the information. This motion was denied on July 22 and on July 23, 1981, the State moved the District Court to reconsider the motion for renewal. That motion was also denied on August 12.

On the same day the motion to reconsider was denied, the State filed a new information alleging attempted sale of dangerous drugs, a felony. This was done pursuant to the suggestion of the District Court in its order denying the motion. On that day the date of the initial appearance was set for September 14. This was done pursuant to an agreement between the State and the defendant, to allow him to avoid extradition to Montana.

The initial appearance and arraignment was held on September 14. At that time the trial date was set for September 21, but was postponed on the application of the defendant until February 1982. On January 12, 1982, the defendant moved to dismiss the

charge on the ground that he was denied his right to speedy trial. This motion was granted on February 2. In its order dismissing the charge, the District Court noted that the time between the dismissal of the first information and the filing of the second should be charged against the State, because in reality this is but one cause of action continuously pursued by the State.

Two issues are presented in this case:

1. Whether the District Court erred when it included the time between the dismissal of the first information and the filing of the second in its calculation of time to see if speedy trial had been denied?

2. Whether the District Court erred when it determined the defendant was denied a speedy trial?

In the case at hand, the State contends that the time between dismissal of the first information and the filing of the second should not be included in the computation of time for a speedy trial, and that the speedy trial clock begins to run anew upon the filing of the second information. Based on that, they also contend that looking at all the factors enumerated under Barker v. Wingo (1972), 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182, there is no denial of a speedy trial here.

In support of its position, the State principally relies on four cases, State v. Sanders (1973), 163 Mont. 209, 516 P.2d 372; State v. Fife (1981), 632 P.2d 712, 38 St.Rep. 1334; Arnold v. McCarthy (9th Cir. 1978), 566 F.2d 1377; and, United States v. McDonald (1982), _ _ U.S. _ _ , 71 L.Ed.2d 696, 102 S.Ct. 1497.

As to the first two decisions, Sanders and Fife, they held that when a cause is reversed and re·anded for retrial, the speedy trial clock begins anew on the date of the remittitur and continues until trial. We do not believe that the rule set out in Sanders and Fife is applicable to the present situation. Both those cases deal with post-appeal situations in which the defendant has already been tried but reversal is required due to some

impropriety in the proceeding.

But, this is not the situation in Mr. Bailey's case. It was through an error in filing the initial information that it was dismissed. Although no formal charges were pending during the interim between the two informations, Bailey still seemed to technically be an accused. During that interim, the deputy county attorney attempted to continue his prosecution. He tried twice to have the information reinstated, through motions. These attempts were opposed by the defendant through his counsel. The District Court, in its order denying the motion to reconsider, had to point out to the county attorney how to proceed. Only then was the proper documentation to refile the charge submitted to the court. Under such circumstances, Bailey is still an accused as his liberty is restrained, because of the uncertainty as to whether his presence will be required, that these efforts to prosecute cause in his normal life, and he is subject to public accusation as these attempts were repeatedly made in open court. This places him in a comparable situation of a defendant who has been arrested thus putting him in the category of accused. United States v. Marion (1971), 404 U.S. 307, 321, 30 L.Ed.2d 468, 92 S.Ct. 455. Being an accused is all that is required for the right to speedy trial to attach. State v. Larson (1981), 623 P.2d 954, 957.

The Arnold case relied on by the State is factually distinguishable from the case at hand. Despite it dealing with a period between the dismissal of a charge after a mistrial and the subsequent refiling of that charge, the prosecutor in that case did not make attempts to continue prosecution in the interim between the first and second charging. This cannot be said of the county attorney in Bailey's case though. As pointed out above, he tried to continue the prosecution, between the dismissal of the first and the filing of the second charge. Also, as pointed out above, this continued attempt to prosecute placed Bailey in a position similar to that of one who had been arrested thus making

him an accused.

The State also relies on the recent plurality opinion of the United States Supreme Court in United States v. McDonald, supra. In that case a captain stationed at Fort Bragg, North Carolina, was formally charged with the murder of his wife and children. Those charges were dismissed and he was honorably discharged. But, at the request of the Justice Department, the Army's Criminal Investigation Division (CID) continued its investigation. All the information gathered was forwarded to the Justice Department. The information was ultimately presented to a grand jury which indicted McDonald for the murders.

However, the McDonald case is also distinguishable from the one presently before us. Despite McDonald being aware of the ongoing investigation that took place during the several years between the dismissal of the army charges and his subsequent indictment by the grand jury, it cannot be said that he was technically an accused. But, this is not the case with Bailey. Despite no formal charges pending, it is clear from the record he is an accused, because as pointed out above, in our discussions of the other cases the State relies on, he is in a similar position to an arrested person due to the State's continued efforts to charge him during the interim between the first and second information.

We therefore hold that under these facts that Bailey meets the threshold requirement of being an accused, thus, the right to a speedy trial attaches.

The State contends that in applying the ad hoc test, which is mandated by Barker v. Wingo, supra, to determine if a defendant's right to speedy trial has been denied that the clock should begin to run anew on the filing of the second information. But, as set out above, this is not the case, because Bailey was an accused from the time of his initial arrest, due to the proceedings that took place in the interim between the dismissal of the first information and the filing of the second and the effect of those

proceedings on him.

Therefore, all that remains to be done is to apply the Barker ad hoc balancing test to Bailey's case. This Court has set out how this test is to be applied in State v. Larson, supra, where it stated:

> "Four factors to be considered under the analysis are: (1) length of delay; (2) reason for delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. at 2191. It must be remembered, however, none of the four factors is recognized as either a necessary or sufficient condition to a finding that the right to a speedy trial has been deprived. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. The Court must still engage in a difficult and sensitive balancing process. See Barker, 407 U.S. at 533, 92 S.Ct. at 2193." 623 P.2d at 957.

Length of delay is the first factor to be looked at under the test. This is the triggering mechanism, State v. Fife, 632 P.2d at 715, and unless there is a period of delay long enough to be presumptively prejudicial, no further inquiry is required; State v. Armstrong (1980), 616 P.2d 341, 351, 37 St.Rep. 1563.

Bailey claims a delay of 216 days in this case. However, in our view, only 186 days, the period from his initial arrest until the filing of the second information, should be used to determine if the delay is presumptively prejudicial. The remaining time is due to the defendants need for time to put his affairs in Indiana in order prior to returning to Montana to face the drug charges and a request for a continuance granted to him.

The 186 days in this case is sufficient to trigger the inquiry to see if the defendant's right to speedy trial was denied. The length of the delay necessary to provoke such an inquiry is dependent on the peculiar circumstances of the case and a lesser delay will be tolerated for simply street crimes, as we have here, than for complex ones; Barker v. Wingo, 407 U.S. at 530, 531.

Now we must look at the second factor under the test set out by Barker, the reason for the delay. It is clear from the facts

that the cause of this delay was the deputy county attorney's error in filing the information. Therefore, the entire 186 days from Bailey's arrest until the second information was filed is attributable to the State.

The third factor to be considered is the defendant's assertion of his right. The State, when discussing this factor, urges this Court to adopt the position that Bailey's assertion was sufficient to raise inquiry as to whether the right was denied, but is insufficient to sustain the defendant's claim on its merits because the right was not asserted often enough. However, this is not the case, because as long as the defendant has asserted his right to speedy trial prior to trial, he has met the third factor in this test; State v. Steward (1975), 163 Mont. 385, 543 P.2d 178, 182; State v. Larson, 623 P.2d at 958.

The State, when discussing the assertion of the right, also claims that Bailey did not want a speedy trial because he exercised his right to have the information dismissed and resisted its reinstatement after the State failed to comply with section 46-11-203, MCA. This position is untenable. We cannot penalize the defendant for exercising his statutory rights or for the prosecutor's mistake. To do so would be to deprive him of due process of law which is guaranteed under Article II, Section 7 of the Montana Constitution. Neither can we force him to chose one right over another, this was made clear by the United States Supreme Court in Simmons v. United States (1968), 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967, where it addressed a similar issue and stated: ". . . we find it intolerable that one constitutional right should have to be surrendered to assert another." Because this analysis seems to apply with equal strength not only to constitutional rights but to all rights, Bailey should not and cannot be forced to chose between his statutory right under section 46-11-203, MCA, and his constitutional right to a speedy trial.

The fourth factor to be considered under the Barker analysis

is that of prejudice:

> "Prejudice in a speedy trial context is to be assessed in light of the interests of defendants which the speedy trial right was designed to protect. In this regard, defendants' interests have been identified as: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and, concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' Barker v. Wingo, 407 U.S. at 532, 92 S.Ct. at 2192." State v. Larson, 623 P.2d at 658-659.

In addressing this factor, the State asserts that no prejudice whatsoever exists. However, the defendant claims prejudice due to the fact that he was required to give up his job in Indiana and return to Montana to defend the charges. Economic hardship has been recognized as one form of prejudice that can flow from the deprivation of a defendant's speedy trial right; State v. Harvey (1979), 603 P.2d 661, 668, 36 St.Rep 2035; United States v. Marion, 404 U.S. at 320. Here, the county attorney claims that any economic loss is not prejudice caused by the State's conduct, as it was the result of Bailey's ignorance of the law and not as a result of the State's prosecution of this offense. We disagree. The economic hardship the defendant suffered is a direct result of error in the handling of this case by the State. The defendant's loss would have never occurred if the filing of the information would have been handled properly in the first place.

The length of delay in this case shifted the burden to the State to explain the reasons for it and to show the absence of prejudice to the defendant; State v. Fife, 632 P.2d at 715. It did neither adequately, as it is apparent that the State's own actions caused the delay and as shown above there was prejudice. These considered along with the other relevant circumstances such as the length of delay and the defendant's status as an accused, during the entire period of delay attributable to the State, support the District Court's finding that the defendant was denied his right to speedy trial.

We therefore affirm.

_____
Justice

- 8 -

We concur:

_____
Chief Justice

_____

_____

_____
Justices