No. 00-163

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 70

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

DANIEL LEE STIFFARM,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. BDC-98-509(c),
The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Montana Appellate Defender Office, Helena, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Ilka Becker,
Assistant Attorney General, Helena, Montana

            Brant Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  December 19, 2002

Decided:  April 3, 2003

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1     The State of Montana charged Defendant, Daniel Lee Stiffarm, with one count of felony assault in the District Court for the Eighth Judicial District in Cascade County. Stiffarm moved to dismiss the charge against him, for denial of his right to a speedy trial. The District Court denied his motion and, following a jury trial, he was convicted of felony assault and sentenced to twenty years in prison.  Stiffarm appeals the judgment of the District Court.  We affirm the District Court.

¶2     The issues on appeal are:

¶3     1.  Was Stiffarm denied his constitutional right to a speedy trial in District Court?

¶4     2. May this Court review the District Court's flight instruction when no objection was made in the District Court?

                    FACTUAL AND PROCEDURAL BACKGROUND

¶5     Daniel Lee Stiffarm was arrested on November 11, 1998, and initially charged with attempted homicide based on allegations that he had repeatedly stabbed his former girlfriend. Those charges were later dismissed and, on November 24, 1998, the State filed an information charging Stiffarm with assault in violation of § 45-5-202(2)(a), MCA (1997). Bail was set at $150,000, an amount that Stiffarm was unable to satisfy.  He sought a reduction in bail, however, the District Court denied a reduction based on the seriousness of the offense charged, the fact that Stiffarm was on probation when the alleged crime occurred, and Stiffarm's prior criminal history.

¶6     Trial was initially set for April 19, 1999, however, due to various continuances, it did not occur until November 1, 1999.

¶7     On September 14, 1999, Stiffarm filed a *pro se* Motion to Dismiss for Failure to Provide a Speedy Trial and an Affidavit, in which he alleged that he had been provided ineffective assistance of counsel from his prior attorney, that his second attorney had been appointed just 75 days prior to trial, that he had been in maximum security and lockdown, and that this "exacerbated a problem I realized I had and for which I was attempting to obtain help prior to the alleged incident for which I am charged." He also alleged that the delay had caused the loss of deposition testimony and that he was unable to locate several witnesses, including a doctor who took a CAT scan of his brain prior to the alleged incident. Stiffarm did not provide names for the missing witnesses or doctor.

¶8     On October 26, 1999, the District Court conducted a hearing with respect to the trial delay and any prejudice it may have caused. The State presented witnesses who testified that their memories of the alleged incident were intact and that all evidence held by the State was preserved. The State offered to help locate the missing doctor. Stiffarm testified with respect to the prejudice he suffered while incarcerated and while awaiting trial. He testified that since incarcerated, he had been assaulted by prison guards on several occasions. He also testified that since his initial incarceration, he had been placed on suicide watch because of his depression. However, Stiffarm also testified that his depression, while incarcerated, "was about, about the same when [he] first came in . . ." and that his depression had "got a lot better since about five months ago." He said that prescribed medication helped with his

3

depression, anxiety, and general mental health, although he still had some pre-trial anxiety, had trouble sleeping, and missed contact with his daughter.

¶9     After the hearing, the District Court concluded that Stiffarm had not been denied his right to a speedy trial based on its finding that any presumption of prejudice from delay had been rebutted by the State.

¶10    On October 22, 1999, the Cascade County Attorney submitted proposed jury instructions, which included Proposed Instruction #10, an instruction on flight, which stated:

> If you are satisfied that the crime charged in the information has been committed by someone, then you may take into consideration any testimony showing, or tending to show, flight by the defendant. This testimony may be considered by the jury as a circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given such circumstance and significance if any, to be attached to it, are matters for the jury to determine.

In his October 28, 1999, response, Stiffarm presented no written objection to the flight instruction. The same flight instruction was presented to the jury by the District Court as Instruction #14 on November 3, 1999. Stiffarm did not object to Instruction #14 at any time during the settlement of the final jury instructions.

¶11    Following trial, the jury returned a guilty verdict. The District Court found that Stiffarm was a persistent felony offender and sentenced Stiffarm to twenty years in prison. Stiffarm appeals the judgment of the District Court.

## STANDARD OF REVIEW

¶12    The District Court's conclusion that Stiffarm was not denied his right to a speedy trial involves a question of constitutional law. *City of Billings v. Bruce*, 1998 MT 186, ¶ 18, 290

4

Mont. 148, ¶ 18, 965 P.2d 866, ¶ 18.  We review a district court's conclusions of law "to determine whether its interpretation of the law is correct."  *Bruce*, ¶ 18 (citations omitted).

DISCUSSION

ISSUE 1

¶13    Was Stiffarm denied his constitutional right to a speedy trial in District Court?

¶14    The District Court concluded that Stiffarm was not denied his right to a speedy trial after considering the four-part test set forth in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, as modified by this Court in *Bruce*.  The District Court found that there were 342 days of delay between the filing of charges and Stiffarm's trial and that the entire delay was attributable to the State.  However, after considering the testimony and evidence presented by the State, the District Court concluded that the State had sufficiently rebutted the presumption that the trial delay had caused prejudice to Stiffarm and that, therefore, his constitutional right to a speedy trial had not been denied.

¶15    The right to a speedy trial is protected both by the Sixth Amendment to the U.S. Constitution and Article II, Section 24, of the Montana Constitution.  The test for determining whether a defendant was denied his right to a speedy trial is set forth in *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, which requires this Court to consider: "(1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right to a speedy trial by the defendant; and (4) the prejudice to the defense."  *Bruce*, ¶ 19 (citation omitted).  In *Bruce*, we concluded that these four factors are "general guidelines to be applied on a case-by-case basis to the unique circumstances of each case," *Bruce*, ¶ 20,

5

and provided a prospective rule in which we may determine the weight and consideration to give to each of the four factors. *See Bruce*, ¶¶ 55-58.

¶16    Following *Bruce*, we will first consider the length of the delay. In *Bruce*, this Court established that a delay greater than 200 days will trigger further speedy trial analysis. *Bruce*, ¶ 55. The District Court found that the length of delay for Stiffarm was 342 days. On appeal, Stiffarm contends that the delay was 353 days–the time between his arrest on November 11, 1998, and his trial which began on November 1, 1999. The State contends that the delay was 342 days–the time from when charges were filed until trial. Since the difference does not affect our analysis, we need not resolve that issue.

¶17    The second factor in the *Barker* test is the reason for the delay. We concluded in *Bruce* that "when it has been demonstrated that 275 days of the delay is attributable to the State, then the burden should shift to the State to demonstrate that the defendant has not been prejudiced by the delay." *Bruce*, ¶ 56. The State concedes that the entire delay in this case was attributable to the State. Therefore, the State bears the burden of proving that Stiffarm was not prejudiced by the pretrial delay.

¶18    Before considering prejudice to the defendant, we must next consider whether Stiffarm timely asserted his right to a speedy trial. In *Bruce*, we concluded that "we will follow those decisions in which we have held that if the right to speedy trial is invoked at any time prior to the commencement of trial, either by demanding a speedy trial, or by moving to dismiss for failure to provide a speedy trial, the third prong is satisfied." *Bruce*,

6

¶ 57. There is no dispute that Stiffarm timely filed his *pro se* motion to dismiss, satisfying the third factor.

¶19    We next consider the fourth factor of the *Barker* analysis, whether Stiffarm was prejudiced by the pretrial delay.  As stated previously, due to the length and cause of the delay, the State bears the burden to demonstrate that Stiffarm was not prejudiced as a result of the delay.  In *Bruce*, we stated that:

> The State's proof should take into consideration, but need not include, all three traditional bases for prejudice: (a) pretrial incarceration, (b) anxiety and all of its attendant considerations, and (c) impairment of the defense.  In considering whether the State has met its burden, the district court should take into consideration the fact that direct proof of a defendant's state of mind may not always be possible, and that the State's ability to anticipate the nature of the defendant's defense may vary from case to case.  Therefore, there may be cases where the State can satisfy its burden without demonstrating a lack of prejudice based on each consideration.

*Bruce*, ¶ 56.

¶20    With respect to the first basis for prejudice, pretrial incarceration, it is apparent that Stiffarm was in jail between the time of his arrest and trial due to his inability to pay the $150,000 bail necessary for his conditional release.  The State noted that Stiffarm's bail was set at this amount due to the severity of the alleged crime, that Stiffarm was on probation for a prior felony offense when the alleged crime occurred, and that Stiffarm had a prior criminal record, which included convictions of burglary, domestic abuse, disorderly conduct, and driving under the influence of intoxicating substances.  The State contends, and we agree, that most of any prejudice that Stiffarm suffered because of his pretrial incarceration was due to the natural consequences of his prior and alleged conduct.

7

¶21　With respect to pretrial anxiety, Stiffarm testified that he suffered from depression as a result of his incarceration, being in "lock down" at times, and his separation from his daughter.  He testified that he was on "suicide watch" for the first two months of his incarceration, and that he had difficulty sleeping due to anxiety about his upcoming trial.  However, while on direct examination by his counsel, Stiffarm admitted that he was depressed prior to his incarceration, and when asked "Were you as depressed on the streets as you are while you are incarcerated," he testified that "I was about, about the same when I first came in, yeah."  Stiffarm further testified that his depression had gotten "a lot better" in the previous five months and that he had access to counselors and medication to treat his depression.  The State also presented the testimony of Katherine Barr, a transport officer for the Cascade County Sheriff's office, who testified that an inmate would only be placed on "lock down" for violations of prison rules or for concerns about inmate safety as opposed to the severity of the crime which the inmate was accused of committing.  We conclude, therefore, that any presumption of prejudice from pretrial anxiety was adequately rebutted.

¶22　With respect to impairment of the defense, the State presented affidavits of its subpoenaed witnesses stating that they believed their memories of the alleged assault were still intact.  In addition, the State provided the testimony of the victim, one of its witnesses and Officer James Nett, the police officer who responded to the reported incident, who testified to the same effect.  The State also presented the testimony of Patty Davidson, an evidence technician for the Great Falls Police Department, who testified that all of the evidence stored at the Great Falls Police Department was properly stored and preserved.

8

¶23    In this case, giving due consideration to the three traditional bases for prejudice, we conclude that the State did sufficiently rebut the presumption of prejudice against Stiffarm. Therefore, as we stated in *Bruce,* "[o]nce the State has demonstrated lack of prejudice based on one or more of these considerations, the burden will then shift to the defendant to demonstrate prejudice and the district court will have to weigh the evidence of each party." *Bruce*, ¶ 56. Stiffarm provided little additional evidence to demonstrate prejudice. He stated that his prior counsel was ineffective and had failed to contact witnesses that he needed for his defense but failed to provide any names for these witnesses. Stiffarm contended that the death of Justice of the Peace Billy Miller, in whose court charges were originally filed, prejudiced his defense because of allegedly missing depositions from fact witnesses near the time of the alleged assault. However, the District Court noted that no depositions had been taken. Stiffarm contended that he was unable to locate a doctor that had apparently taken a CAT scan of his brain prior to the alleged assault, but the District Court noted that Stiffarm, again, did not provide the name of this doctor and that Stiffarm was not going to plead a mental disease or defect as an affirmative defense.

¶24    We conclude that the State sufficiently rebutted the presumption that the trial delay in this case prejudiced Stiffarm and that Stiffarm failed to demonstrate any prejudice.

¶25    For these reasons, we conclude that the State did not deny Stiffarm's constitutional right to a speedy trial.

9

ISSUE 2

¶26 May this Court review the District Court's flight instruction when no objection was made in the District Court?

¶27 Stiffarm contends that this Court should consider the District Court's flight instruction to the jury based on our decision in *State v. Hall*, 1999 MT 297, 297 Mont. 111, 991 P.2d 929, where, subsequent to Stiffarm's trial, we adopted the view that "a jury instruction on flight is an unnecessary comment on the evidence by the trial court." *See Hall*, ¶¶ 45-46. The State contends that our opinion in *Hall* was to be applied prospectively, that it does not impact a fundamental constitutional right, and that Stiffarm should be precluded from making this argument on appeal because he failed to object to the instruction before and during trial. The State cites our decisions in *State v. Hatten*, 1999 MT 298, 297 Mont. 127, 991 P.2d 939, and *State v. Baker*, 2000 MT 307, 302 Mont. 408, 15 P.3d 379, in support of its contention that Stiffarm's objection was not properly preserved.

¶28 Our opinion in *Hall* was decided on December 6, 1999, one month after the trial in this case and our opinion in *Hall* stated that "the better policy in *future cases* where evidence of flight has been properly admitted is to reserve comment to counsel, rather than the court." *Hall*, ¶ 46 (emphasis added); *see also Hatten*, ¶ 66. In *Hatten*, we concluded that where the defendant objected to the flight instruction but failed to specifically object that the flight instruction was "an improper comment on the evidence," it would be improper for this Court to reverse the District Court. *Hatten*, ¶ 67. We quoted our prior holding in *State v. Grimes*, 1999 MT 145, ¶ 37, 292 Mont. 22, ¶ 37, 982 P.2d 1037, ¶ 37, where we stated "[a] party

may not assign as error any portion of the instructions or omission from the instructions unless an objection was made specifically stating the matter objected to, and the grounds for the objection, at the settlement of the instructions." *Hatten*, ¶ 67 (emphasis omitted); *see also Baker*, ¶ 29 ("The District Court should not be put in error when it was never given a chance to rule on the specific objection." (Citation omitted)).  In this case, Stiffarm failed to object to the flight instruction at all.  Therefore, we will not consider Stiffarm's objection to the flight instruction raised for the first time on appeal.

¶29    For the foregoing reasons, the judgment of the District Court is affirmed.


/S/ TERRY N. TRIEWEILER


We Concur:


/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

11