No. 05-040

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 303

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

FELIX DIAZ,

      Defendant and Appellant.

APPEAL FROM:    The District Court of the Eighth Judicial District,
                     In and For the County of Cascade, Cause No. ADC 03-340,
                     Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Jeffry L. Olson, Office of the Public Defender, Great Falls, Montana

      For Respondent:

      Honorable Mike McGrath, Attorney General; Tammy K. Plubell,
      Assistant Attorney General, Helena, Montana

      Brant Light, County Attorney; John Parker and Marvin Anderson,
      Deputy County Attorneys, Great Falls, Montana

                                  Submitted on Briefs:  February 8, 2006

                                          Decided:  November 22, 2006

Filed:

_____
                     Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Felix Diaz appeals from two orders of the Eighth Judicial District Court, Cascade County, excluding witness testimony and denying Diaz's motion to dismiss for violation of his right to a speedy trial. Diaz also alleges ineffective assistance of counsel. We affirm the District Court and reject Diaz's ineffective assistance of counsel claim.

¶2    We restate and address the issues on appeal as follows:

¶3    1. Did the District Court abuse its discretion by excluding the testimony of Jonathan Comes At Night?

¶4    2. Did Diaz receive ineffective assistance of counsel due to counsel's failure to procure D. J. Matt's presence at trial?

¶5    3. Did the District Court err in denying Diaz's motion to dismiss for violation of his right to a speedy trial?

**BACKGROUND**

¶6    On the evening of June 8, 2003, a man entered the Starway Superette with a gun and ordered Calixto Joaquin, the owner and sole employee of the store, to open the cash register. The same man had been in the store about fifteen minutes earlier. Joaquin opened the register, and the man shot him in the head. Joaquin managed to remain conscious. Ryan McVey entered the store during the robbery, and the man ordered him to get down. Joaquin called 911 once the man left the store. Both Joaquin and McVey provided descriptions of the man. Joaquin described him as an approximately 25-year-old Native American male with short, dark hair and a stocky build. McVey described

2

the man as pretty big, and thought he might be a Native American from Rocky Boy or Browning, in part because of his "reservation accent."

¶7     An evidence technician for the Great Falls Police Department found no usable fingerprints at the crime scene. He located some footprints outside the store, but only obtained impressions of poor quality. He found one .22 bullet casing and a hair near the cash register. None of this evidence was sent to the Montana State Crime Lab.

¶8     The police pursued multiple leads in the weeks following the shooting. Several possible suspects emerged, including D. J. Matt. Jonathan Comes At Night stated that he heard Matt admit to the shooting, and Helen and Donald Comes At Night provided similar information. However, there were inconsistencies between these statements, and McVey said with certainty that Matt was not the shooter after seeing a photograph of Matt. Before the authorities either searched for Matt or showed his picture to Joaquin, who had moved to Florida, a new suspect, Diaz, emerged.

¶9     On July 18, 2003, Tiffany Davies, Diaz's girlfriend, contacted law enforcement in Colorado. At a subsequent interview, Davies cried and appeared extremely scared. Davies related that she had asked Diaz about a gun she found in his duffle bag when he returned from Great Falls, where the two had previously resided. Diaz explained to her that he had robbed a convenience store while in Great Falls and shot the clerk in the top of the head after the clerk reached for a gun. Additionally, Janice Louis, Davies's mother, lived near Great Falls at the time, and Diaz visited her on June 6, 2003. During the visit, Diaz shot a gun in Louis's backyard for target practice and picked up the cartridges. The authorities inspected this location but found no evidence. Authorities

3

sent a photographic lineup including Diaz to Florida, and Joaquin identified Diaz as the shooter. Authorities also showed such a lineup to McVey, who could not, with certainty, identify Diaz as the shooter.

¶10 The State filed an information charging Diaz with attempted deliberate homicide and robbery on July 21, 2003. The District Court scheduled a jury trial to begin on October 20, 2003, but several delays occurred. The delay at issue on appeal arose on March 1, 2004, when the State filed a second motion to continue trial because of its inability to locate Davies after Diaz contacted her. The State had previously filed an amended information adding a count of solicitation to commit witness tampering on February 24, 2004. This delay lasted 91 days. Other delays occurred, and the trial was finally scheduled for October 4, 2004.

¶11 Before trial, Diaz filed a motion to dismiss due to the violation of his right to a speedy trial, alleging that the State was responsible for the pivotal 91-day delay during which the State attempted to locate Davies. The State responded that the delay was due to Diaz's illegal contact with Davies. The District Court attributed the 91-day delay to Diaz, reasoning that "[Diaz's] alleged misconduct directly caused an issue to be raised. The State should not be held responsible for periods of delay directly resulting from alleged actions of [Diaz]." This left only 249 days attributable to the State, giving Diaz the burden to demonstrate prejudice. The District Court determined Diaz failed this burden and denied his motion.

¶12 On September 23, 2004, Diaz filed a motion to add Jonathan, Helen and Donald Comes At Night as witnesses at trial. The State filed a motion *in limine* to exclude

4

these three as witnesses, arguing that any testimony by them regarding an alleged confession by D. J. Matt would be hearsay under M. R. Evid. 804. The District Court initially deemed this issue moot, as it appeared that none of these three would be available to testify when trial began on October 4, 2004. However, Diaz called Jonathan Comes At Night to testify on the last day of trial, and the State renewed its request that the District Court exclude his hearsay testimony. The District Court granted the State's request, determining that Diaz failed to prove either the unavailability of Matt or corroborating circumstances indicating the trustworthiness of the statement.

¶13 Following a three-day trial, the jury found Diaz guilty of all three charges, and the District Court sentenced him to a total of 150 years in the Montana State Prison, without eligibility for parole. This appeal followed. Additional facts follow as necessary.

## STANDARD OF REVIEW

¶14 The determination of the relevancy and admissibility of evidence is left to the sound discretion of the trial judge, and this Court will not overturn such determination absent an abuse of discretion. *State v. Paoni*, 2006 MT 26, ¶ 13, 331 Mont. 86, ¶ 13, 128 P.3d 1040, ¶ 13 (citations omitted). A claim of ineffective assistance of counsel is a mixed question of law and fact that this Court reviews *de novo*. *State v. Gallagher*, 2005 MT 336, ¶ 15, 330 Mont. 65, ¶ 15, 125 P.3d 1141, ¶ 15 (citations omitted). The right to a speedy trial involves a question of constitutional law, and this Court will review a district court's conclusion regarding such a question to determine whether it

5

correctly interpreted the law. *State v. Stiffarm*, 2003 MT 70, ¶ 12, 314 Mont. 499, ¶ 12, 67 P.3d 249, ¶ 12 (citations omitted).

## DISCUSSION

¶15 **1. Did the District Court abuse its discretion by excluding the testimony of Jonathan Comes At Night?**

¶16 Diaz argues that the District Court erred in not allowing Comes At Night to testify that D. J. Matt confessed to the shooting of Joaquin. Diaz argues that Matt was unavailable pursuant to M. R. Evid. 804(a)(5) because his counsel attempted to locate Matt and was unable to do so. As support, Diaz notes that neither the Glacier County Attorney's Office nor the Pondera County Attorney's Office knew Matt's location, and the lead detective in the investigation failed to locate Matt.

¶17 Diaz further argues that sufficient corroborating circumstances regarding Matt's confession existed to satisfy the trustworthiness requirement of M. R. Evid. 804(b)(3). These corroborating circumstances included that Matt was crying and very upset when he confessed to Jonathan, that Matt correctly identified the location of the store and the ethnicity of the victim as Chinese or Asian, that an FBI field agent in Browning informed the State of possible evidence tying Matt to the shooting, and that both Joaquin and McVey indicated that the shooter was a Native American.

¶18 M. R. Evid. 804(b)(3) provides:

> (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is *unavailable* as a witness:
>
> . . . .

6

(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement*. [Emphasis added.]

¶19    M. R. Evid. 804(a)(5) provides:

(a) Definition of unavailability. Unavailability as a witness includes situations in which the declarant:

. . .

(5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means.

¶20    For a declarant to be considered unavailable under M. R. Evid. 804(a)(5), the proponent must be unable to procure attendance by "reasonable means." *See* Commission Comments to M. R. Evid. 804. More than a half-hearted effort is thus required. For example, this Court has held that subpoenaing an out-of-town witness the night before trial falls short of meeting the "reasonable means" standard. *State v. Widenhofer*, 286 Mont. 341, 352-53, 950 P.2d 1383, 1390 (1997).

¶21    As in *Widenhofer*, Diaz's counsel took insufficient steps to satisfy the "reasonable means" standard. Counsel's only effort to locate Matt consisted of contacting the county attorney offices in Glacier and Pondera Counties. Diaz's counsel failed to take other available steps, such as contacting the Blackfeet Reservation, having a subpoena issued for Matt, or sending an investigator to attempt to find Matt. Also, we

7

are not persuaded by the inability of the lead investigator to find Matt, since he abandoned this effort after Diaz emerged as a more likely suspect, and the burden of establishing the unavailability of a declarant resides with the proponent. *State v. Osborne*, 1999 MT 149, ¶ 21, 295 Mont. 54, ¶ 21, 982 P.2d 1045, ¶ 21 (citing *Idaho v. Wright*, 497 U.S. 805, 816, 110 S. Ct. 3139, 3147 (1990)). Given the failure of Diaz's counsel to utilize "reasonable means" to locate Matt, the District Court did not abuse its discretion in determining that Diaz failed to prove the unavailability of Matt.

¶22 Having affirmed the District Court's conclusion that Diaz failed to prove that Matt was unavailable, we need not discuss whether the corroborating circumstances provided by Diaz were sufficient to satisfy the trustworthiness requirement of M. R. Evid. 804(b)(3).

¶23 **2. Did Diaz receive ineffective assistance of counsel due to counsel's failure to procure D. J. Matt's presence at trial?**

¶24 Diaz argues that his trial counsel provided ineffective assistance of counsel because she failed to either procure Matt's presence at trial or make a showing of his unavailability. Diaz argues that the evidence against him was not overwhelming and that evidence of Matt's confession would have led to a not guilty verdict.

¶25 A criminal defendant is guaranteed the right to effective assistance of counsel under both the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution. *See Gallagher*, ¶ 23. The burden is on the defendant to prove that: (1) his counsel's representation was deficient and below an objective standard of reasonableness, and (2) his counsel's failure was prejudicial.

8

*Gallagher*, ¶ 23 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064-65 (1984)).  The defendant must establish prejudice showing a reasonable probability that the results of the proceedings would have been different but for the unprofessional conduct of counsel.  *Gallagher*, ¶ 25 (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).  This Court will dispose of a claim of ineffective assistance of counsel for lack of sufficient prejudice when possible to avoid unnecessarily grading counsel's performance.  *Gallagher*, ¶ 25 (citing *State v. Kearney*, 2005 MT 171, ¶ 20, 327 Mont. 485, ¶ 20, 115 P.3d 214, ¶ 20).

¶26 Here, we are able to dispose of Diaz's ineffective assistance of counsel claim because he was not sufficiently prejudiced by his counsel's inability to procure Matt's presence at trial.  Despite the absence of Matt's testimony, Diaz's claim of prejudice fails because his counsel nevertheless succeeded in introducing the alleged confession at trial through the testimony of the State's lead investigator.  During cross-examination of the lead investigator, Diaz's counsel asked why Matt was considered a strong suspect.  In response, the lead investigator explained "we had information that he had been bragging about doing the robbery and shooting a man in the head."  Later, during closing, Diaz's counsel reminded the jury: "[W]e have that suspect up in Browning . . . that apparently confessed to this.  Heard testimony about that.  . . . This is a confession.  This is law enforcement gold, ladies and gentlemen."  The jury, therefore, knew of the alleged confession and Diaz's counsel was able to argue, in closing, that the confession exonerated Diaz.  Diaz actually benefited from Matt's absence since Matt was not subject to cross-examination and had no opportunity to invoke the Fifth Amendment or

9

deny his alleged confession. Since Diaz suffered no prejudice, we hold that his claim of ineffective assistance of counsel is without merit.

¶27 **3. Did the District Court err in denying Diaz's motion to dismiss for violation of his right to a speedy trial?**

¶28 Diaz argues that the District Court erred in attributing to him the 91 days of delay for his alleged misconduct in contacting Davies. He argues that the delay is attributable to the State since it requested the continuance. He further contends that attributing this delay to him because of the alleged solicitation violated his rights to a presumption of innocence and due process, as well as his right to a speedy trial. The delay was unnecessary, according to Diaz, because the State could have filed a separate case against him regarding the solicitation charge. Finally, Diaz contends that, although the District Court erred in placing the burden of establishing prejudice on him, he nonetheless established prejudice.

¶29 Both the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee the right to a speedy trial. *See Stiffarm*, ¶ 15. To determine whether a violation of this right occurred, this Court must consider "(1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right to a speedy trial by the defendant; and (4) the prejudice to the defense." *City of Billings v. Bruce*, 1998 MT 186, ¶ 19, 290 Mont. 148, ¶ 19, 965 P.2d 866, ¶ 19 (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972)). Since no single factor is decisive, this Court employs the following balancing test: the "greater the degree of fault by the State in causing the delay, the less the delay or prejudice that

10

need be shown. Where there is no fault on the part of the State for [the] delay, greater prejudice, and presumably greater delay, would have to be shown." *State v. Highpine*, 2000 MT 368, ¶ 14, 303 Mont. 422, ¶ 14, 15 P.3d 938, ¶ 14 (quoting *Bruce*, ¶ 53).

¶30 The State does not dispute that Diaz satisfied the first factor, length of delay, and the third factor, timely assertion of the right. As such, we need only consider the second factor, reason for the delay, and the fourth factor, prejudice to the defense.

¶31 The reason for the delay, or, in other words, which party is responsible for the delay, effects the burden of proof concerning prejudice to the defense. If 275 or more days of delay are attributable to the State, "the burden should shift to the State to demonstrate that the defendant has not been prejudiced by the delay." *Stiffarm*, ¶ 17 (quoting *Bruce*, ¶ 56). Here, if the 91 days of delay are attributed to Diaz, that leaves 249 days attributed to the State, which is less than the 275 days required to shift the burden to the State. On the other hand, if the 91 days are attributed to the State, that totals 340 days for the State. This is more than sufficient to shift the burden to the State to show that Diaz was not prejudiced.

¶32 Speedy trial delay will not be charged to the State when a material witness with "valid reason" is not available. *State v. Tilly,* 227 Mont. 138, 142, 737 P.2d 484, 487 (1987) (citing *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192). In *Tilly*, we explained that a valid reason exists when a material witness is unavailable due to defendant's unlawful acts. *Tilly*, 227 Mont. at 142, 737 P.2d at 487. The defendant in *Tilly* was accused of sexual intercourse without consent with his minor daughter. *Tilly*, 227 Mont. at 139, 737 P.2d at 485. Prior to trial, the defendant wrote love letters to his daughter, in

11

violation of a court order, and the State moved for a continuance due to the daughter's mental and physical illness which was caused in large part by the Defendant's unlawful acts. *Tilly*, 227 Mont. at 140-41, 737 P.2d at 486-87. We found that the State produced a reasonable excuse and charged the defendant with the delay. *Tilly*, 227 Mont. at 141-42, 737 P.2d at 487.

¶33 Here, as with *Tilly*, the State's inability to locate Davies was attributable to Diaz's communication with the witness. Diaz had corresponded with both Davies and Louis, Davies's mother. At trial, Louis testified that the correspondence she received from Diaz indirectly told Davies not to testify. Louis also testified that Diaz wanted Davies to go to Mexico. In showing that Diaz unlawfully solicited Davies in an attempt to prevent her from testifying, we conclude that the State produced a "valid reason" for the delay and thus the 91 days were attributable to Diaz. As such, only 249 days of delay were attributable to the State, and Diaz had the burden to show prejudice.

¶34 A defendant can establish prejudice to the defense based on any of the following three factors: (1) pretrial incarceration; (2) anxiety and concern to the defendant; and (3) impairment of defense. *State v. Bowser*, 2005 MT 279, ¶ 13, 329 Mont. 218, ¶ 13, 123 P.3d 230, ¶ 13. Diaz argues that his pretrial incarceration denied him his rights under Article II, Section 3 of the Montana Constitution (Inalienable Rights). Diaz failed to make this argument before the District Court, however, and we will not allow him to raise the issue for the first time on appeal, because it is fundamentally unfair to fault a district court for failing to rule correctly on an issue it never had the opportunity to consider. *State v. Johnson*, 2005 MT 318, ¶ 13, 329 Mont. 497, ¶ 13, 125 P.3d 1096,

12

¶ 13.   Diaz also argues that his incarceration prevented him from assisting in the preparation of his defense, but he fails to explain what assistance he could have but did not provide.   Such a general allegation is insufficient to establish prejudice.  *See Bowser*, ¶ 23 (defendant's general allegations, with no evidence or citation to particular instances, insufficient to establish impairment of defense).

¶35    Diaz, as evidence that he experienced anxiety and concern, asserts the same two arguments he advanced under pretrial incarceration: that his rights were denied and he was prevented from assisting his defense counsel.   The contentions fail for the same reasons we stated above.  Diaz also asserts that he suffered anxiety and concern because he was denied access to his friends and family.   This Court has recognized that since a certain amount of anxiety and concern is inherent in a criminal charge, the focus must be on the anxiety which is *aggravated* as a result of the delay.  *Highpine*, ¶ 28.   Diaz fails to show any denial of access to his friends and family beyond that inherent in being charged with a felony offense.  Diaz further asserts anxiety and concern from his inability to seek employment, but a generalized inability to work because of pretrial incarceration is alone insufficient to prove prejudice.  *State v. Johnson*, 2000 MT 180, ¶ 31, 300 Mont. 367, ¶ 31, 4 P.3d 654, ¶ 31.

¶36    Diaz also argues that his defense was impaired because witness memories fade over fourteen months, but such a generalized claim of impairment of witnesses' memories is insufficient to rise to the level of prejudice.  *Bowser*, ¶ 23.

## CONCLUSION

¶37    We affirm the District Court's decision to exclude witness testimony and deny Diaz's motion to dismiss for violation of his right to a speedy trial.  We also reject Diaz's ineffective assistance of counsel claim.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE