FILED

04/04/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0584

DA 21-0584

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 60N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

MICHAEL JACOB DUNNE,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DC-18-201
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, James Reavis, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Christine Hutchison, Assistant Attorney General, Helena, Montana

          Eileen Joyce, Silver Bow County Attorney, Anne M. Shea, Deputy County Attorney, Butte, Montana

Submitted on Briefs: March 22, 2023

Decided: April 4, 2023

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Michael Jacob Dunne appeals from the judgment entered by the Second Judicial District Court convicting him of burglary, following a jury trial. Dunne challenges only the District Court's denial of his motion to dismiss for violation of his right to speedy trial.

¶3 Dunne was originally charged with felony burglary, misdemeanor partner or family member assault, and misdemeanor violation of order of protection arising out of his actions in the early morning hours of June 18, 2018, when he kicked in the door of the residence of his former girlfriend, Misty, with whom he shared a daughter, took their daughter from bed and left with her, after Misty refused to provide a sexual favor Dunne had demanded. Dunne was arrested the same day. Ultimately, the State withdrew the misdemeanor charges and trial commenced on the burglary charge on August 23, 2021, 1,162 days later, and Dunne was convicted.

¶4 The Sixth and Fourteenth Amendments of the U.S. Constitution, and Article II, Section 24 of the Montana Constitution, grant to criminal defendants the right to a speedy trial. *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815. Drawing from the Supreme Court's analysis of the federal constitutional right in *Barker v. Wingo*, 407

U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972), we balance four factors to determine if a defendant's right to a speedy trial has been violated under the Montana Constitution: (1) the length of the delay, (2) the reasons for the delay, (3) the accused's responses to the delay, and (4) prejudice to the accused caused by the delay. *Ariegwe*, ¶ 35. Given the "inherently case-specific nature of speedy trial claims," we weigh the four factors based upon the facts and circumstances of each case. *Ariegwe*, ¶ 105.

¶5 The initial inquiry is whether there has been sufficient delay to require application of the four-factor *Ariegwe* test. In *City of Billings v. Bruce*, 1998 MT 186, ¶ 55, 290 Mont. 148, 965 P.2d 866, this Court established that a lapse of 200 days was the necessary time between accusation and trial to trigger application of the speedy trial analysis. That time is satisfied here, and further, under the first factor, the State's burden to justify the delay "increases with the length of delay." *Ariegwe*, ¶ 61 (citation omitted). The time period at issue here exceeds the 200-day threshold by 962 days and, without regard to attribution of fault for the delay, heavily weighs in favor of Dunne's motion.

¶6 Under factor two, setting aside momentarily an assessment of the legal responsibility for the periods of delay and weight thereof for purposes of applying the test, it is clear that much of the delay was, as a matter of fact, caused by actions taken by Dunne and his counsel. In the months following Dunne's arraignment in June 2018, his counsel initially moved to continue discovery and motion deadlines and then requested further continuances of the deadlines for personal reasons. At the omnibus hearing in January 2019, the defense advised the court that it intended to file a suppression motion, for which

3

the court set a briefing schedule and hearing. However, defense counsel thereafter filed several motions to continue these deadlines, resulting in a final re-scheduling of the motions hearing for March 28, 2019. Nevertheless, defense counsel never filed the intended suppression motion, and the hearing was not conducted. On July 26, 2019, the two assigned public defenders representing Dunne filed a motion to withdraw, citing "an irretrievable breakdown in communication between the Attorneys and the Defendant." In his appellate briefing, Dunne explains that this motion was prompted by his demand that he be assigned new counsel because his case was not moving forward.

¶7 A status conference and a series of orders in August 2019 resulted in the granting of the motion for counsel to withdraw and appointment of new counsel on August 14, the scheduling of a final pre-trial conference on November 27, 2019, and a trial on December 16, 2019. However, Dunne, who was released on bond, did not appear for the final pre-trial conference, it was learned that he had failed to stay in contact with his counsel for several months, and that counsel had not been able to locate him. The District Court issued a bench warrant for Dunne, and he was arrested in Jefferson County on January 23, 2020. At the status conference on February 19, 2020, the District Court was advised the parties had not had sufficient time "to discuss resolution" of the matter. The court scheduled a final pre-trial conference for May 27, 2020. The record reflects uncertainty, and the parties disagree, about whether the District Court also set a new trial date at that time. Dunne had other matters that were proceeding, which his counsel sought to resolve along with this matter. Following this status conference in February 2020, negotiation

pursuing what the District Court described as "global settlement of all of Defendant's Silver Bow County criminal matters" was undertaken by the parties. At the May 27, 2020, scheduling conference, Dunne's counsel in this case stated:

> I would just ask for a continuance in my case because *I believe it's the first one set for trial.* And I would ask for that continuance to be after [Dunne's] mid June sentencing in Jefferson County to see if whether or not the county attorney's office would leave their plea offer open after today. . . . [P]erhaps Mr. Dunne would be willing to accept it after his mid June sentencing in Jefferson County. I hope that that all made sense. I know that was a lot. Mr. Dunne has a lot of cases and attorneys. [(Emphasis added.)]

To complicate matters, Dunne then told the court he believed his counsel was not telling him the truth or working in his best interest, and he requested appointment of new counsel. The District Court stated that Dunne should move forward with current counsel and communicate with counsel about the possible plea agreement. The court granted the continuance requested by defense counsel and re-set trial for September 21, 2020.

¶8 However, on August 3, 2020, Dunne's counsel filed a "Status Update" outlining Dunne's five pending criminal proceedings, followed by a request to withdraw from Dunne's representation, stating that, despite counsel's assurances to the court that "she would be willing to continue to assist Mr. Dunne," that Dunne had been "hostile" and "abusive" toward counsel and repeatedly and emphatically was demanding that new counsel be assigned, resulting in a "total lack of communication." The District Court granted leave to counsel to withdraw and ordered new counsel appointed. New counsel appeared on September 3, 2020. A status conference was held on December 9, 2020, at which the court scheduled a final pre-trial conference for February 10, 2021. On that day,

the court was advised that defense counsel had a conflict and would not be able to represent Dunne. The court re-scheduled the final pre-trial conference for March 3, 2021, but kept the date it had previously scheduled trial, April 5, 2021. New counsel was assigned on March 3, 2021, and the District Court requested its law clerk "to help expedite the transition" of the case to new counsel. On March 8, 2021, defense counsel filed a motion to continue because counsel was still waiting for a complete copy of the file materials from the Office of Public Defender. The District Court granted the continuance and re-scheduled the final pre-trial conference on May 12, 2021, and trial for June 21, 2021. At the May 19, 2021, final pre-trial conference, defense counsel requested a continuance of the trial for purposes of filing a motion to dismiss for lack of speedy trial. The District Court granted the continuance and set trial for August 23, 2021, when the trial commenced following the court's denial of the speedy trial motion.

¶9 Ruling on the motion, the District Court found that, of the 225 days, or about seven months, which elapsed between Dunne's arraignment and the omnibus hearing in January 2019, "a significant portion was cause[d] by motions to continue requested by the defense," and that "the State did not cause any delays during this timeframe." About the delay between the appointment of new counsel in August 2019, after counsel's withdrawal in July 2019, to the resumption of the proceeding in February 2020 following Dunne's re-arrest, the District Court essentially reasoned that most of this approximately six-month delay was attributed "to Defendant due to his previous conduct [of absconding] and failure to avail himself to defense counsel." The court reasoned that the delays between May 2020

6

and December 2020 were caused by Dunne's demand for new counsel and the time necessary for new counsel to become familiar with the case and prepare for trial, all of which was lost when, on the day of the final pre-trial conference, defense counsel advised the court of a conflict again necessitating appointment of new counsel.

¶10 The parties both dispute the District Court's individual attribution decisions on these periods of time. Dunne argues, for example, that the six-month delay between January 2019 and August 2019, occasioned by defense counsel's notice it would file a suppression motion followed by repeated continuances but no motion, should be assigned to the State because "the State made no effort to contact the district court and set a trial date." The State responds that this argument was not made before the District Court and that "it would be unfair for this Court to fault a district court for failing to account for an argument or factor that it was not given the opportunity to consider."

¶11 The State cannot idly stand by while a defendant and defense counsel expend months and months of time. It has the obligation to bring the defendant to trial. "[I]t is up to the State to move the case towards prosecution." *Ariegwe*, ¶ 64 (citation omitted). "[A] defendant is under no obligation to ensure diligent prosecution of the case against him or to help the State avoid dismissal for failure to timely prosecute him." *Ariegwe*, ¶ 64 (citation omitted). However, in this case, there was much delay caused by actions the State had little ability to control: it cannot prosecute a defendant who has absconded or who does not have counsel, and these issues pervaded the proceeding. We thus conclude that

the significant delay in this case, much of which was caused by Dunne or is considered institutional delay, weighs little against the State.

¶12 Under factor three, the District Court detailed the communications of Dunne and his counsel to the Court and found that Dunne's "claim that he demanded a speedy trial throughout this matter is not supported by the record or his actions," reasoning that Dunne made one demand for a speedy trial, in January 2021, prior to filing his motion to dismiss. Significantly for resolution here, even if we credit Dunne's argument on this factor, as well as factors one and two in the manner discussed above, he cannot establish, upon a weighing of the factors, that his trial right was violated. Under factor four, Dunne did not establish that he was prejudiced by the procedure followed in this case. He was incarcerated for other matters during most of this proceeding. When Dunne posted bond and was released in late 2018, and re-arrested after he absconded, his incarceration was nonetheless also required on other matters, and thus he did not suffer oppressive incarceration or anxiety merely because of this proceeding. The most significant interest to be considered under the prejudice factor is "the accused's ability to present an effective defense." *Ariegwe*, ¶ 98. Dunne argued to the District Court that the delay had diminished witness memories. Indeed, Dunne used that theory at trial, arguing the lapse of time had undermined his girlfriend's veracity. However, the record does not support his contention and does not establish that he was otherwise prejudiced by the delay.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents

no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶14 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

Justice James Jeremiah Shea did not participate in this matter.